ROY LEE KING, Plaintiff-Appellant, v. LINEMASTER SWITCH CORPO-
RATION, Defendant-Appellee.
First District (3rd Division)   No. 1—90—1342

Opinion filed November 25, 1992.

Herbert F. Stride, Ltd., and William J. Harte, Ltd., both of Chicago
(Herbert F. Stride, William J. Harte, and Joan Mannix, of counsel), for ap-
pellant.

Knight, Hoppe, Fanning & Knight, Ltd., of Park Ridge (Patrick J. Fan-
ning and Janella L. Barbrow, of counsel), for appellee.

JUSTICE TULLY delivered the opinion of the court:
This case arises out of an accident in which the plaintiff, Roy Lee
King, on February 11, 1982, had his hand amputated by a metal
shearing machine. Subsequent to his injury, King filed a lawsuit on

September 1, 1983, against various parties, none of which are still involved in the litigation. On February 10, 1984, King filed an amended complaint in that suit, adding Linemaster Switch Corporation (Linemaster) as a defendant.

King, in counts X, XI, and XII of his amended complaint, alleges that Linemaster defectively manufactured the electronic foot switch controlling the metal shear and is liable to him for the damages he suffered in the accident under the theories of product liability (count X), negligence (count XI), and breach of warranty (count XII). Linemaster moved for summary judgment pursuant to section 2—1005 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005) as to all three counts. King voluntarily dismissed his breach of warranty claim. The trial court denied the motion as to the negligence claim and granted it as to the products liability claim. The trial court, in granting the motion with respect to count X, agreed with Linemaster's argument that the product liability claim was time barred pursuant to the 12-year statute of repose (Ill. Rev. Stat. 1987, ch. 110, par. 13—213). In ruling for Linemaster, the trial court relied upon the deposition and affidavit of James Mead, a field sales manager for Linemaster.

In Mead's one-page affidavit, he stated that: he was familiar with the manufacture, sale, and distribution of Linemaster's products; the foot switch alleged to have been involved in the accident was manufactured by Linemaster; that the serial numbers located on the snap switches contained in the foot switch indicated that the foot switch was manufactured in 1967; the foot switch in question would have been sold within one to two years from the date of manufacture; and the foot switch was not installed by, serviced or altered by Linemaster after its date of sale.

Mead's deposition, taken after the affidavit was executed, further elaborated on the information contained in his affidavit. In that exhaustive deposition, Mead explained that his familiarity with Linemaster's product line is based on his 36 years of experience with the company. However, when questioned on how he reached the conclusion that the foot switch was manufactured by Linemaster, he indicated that he based his conclusion on photographs furnished by the plaintiff and/or upon the representation of someone in Linemaster's engineering department.

With regards to the snap switch contained within the foot switch, Mead stated that it was manufactured by a company named Microswitch. It was Microswitch's serial number "6704" that indicated to Mead that the snap switch component was manufactured in 1967.

Thus, it was from the fact that the component part was manufactured in 1967, that Mead drew his conclusion in the affidavit that that foot switch was manufactured in 1967.

During his deposition, Mead at first stated that he got the date code from the field inspection notes of Robert Tarosky, King's expert. Later, Mead stated that he got the date code from the plaintiff's photographs. Additionally, Mead indicated that a letter from an employee of Microswitch assisted in concluding the date of the manufacture of the snap switch and, consequently, the foot switch.

Mead stated that Linemaster did not code its assembled foot switches. He indicated that Microswitch sells Linemaster thousands of component switches two to three times a year. Mead stated that Microswitch does not sell Linemaster old snap switches and that Linemaster uses the latest model component parts in manufacturing its foot switches.

In his affidavit, Mead stated that the foot switch at issue would have been sold within one to two years from the date of manufacture. However, at his deposition, Mead said that a completed foot switch moves out of Linemaster's plant within 6 to 12 months. With regards to when the foot switch involved in this case was sold, Mead said, "I don't know when this foot switch was sold exactly. *** Nobody would know." Furthermore, there is no documentation available which would indicate the foot switch's date of sale.

King filed a motion to strike Mead's affidavit for failure to conform with the requirements of Supreme Court Rule 191(a) (134 Ill. 2d R. 191(a)). However, the record contains no ruling by the trial court on the motion to strike.

■ King's first argument on appeal is that the affidavit of Mead fails to conform to Supreme Court Rule 191(a). We cannot address the merits of this contention because King has failed to properly preserve this issue for appeal. "When a party moves to strike an affidavit which has been filed in support of a motion for summary judgment, it is that party's duty *** to get a ruling on the motion. His failure to do so waives his objections ***." (*McBride v. Commercial Bank* (1981), 101 Ill. App. 3d 760, 763, 428 N.E.2d 739; see also *Oak Trust & Savings Bank v. Annerino* (1978), 64 Ill. App. 3d 1030, 381 N.E.2d 1389.) Accordingly, we find King failed to obtain a ruling on this issue and, consequently, has waived it.

■ King argues that the trial court erred in entering summary judgment against him after concluding that his action was barred by the statute of repose, which provides, in pertinent part, that: "no product liability action based on the doctrine of strict liability in tort

shall be commenced except within the applicable limitations period and, in any event, within 12 years from the date of first sale, lease or delivery of possession by a seller." (Ill. Rev. Stat. 1987, ch. 110, par. 13—213(b).) The Illinois Supreme Court, in *Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867, stated:

> "While use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit [citation], it is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt. [Citations.]
>
> In determining the existence of a genuine issue of material fact, courts must consider the pleadings, depositions, admissions, exhibits, and affidavits on file in the case and must construe them strictly against the movant and liberally in favor of the opponent." *(Purtill,* 111 Ill. 2d at 240, 489 N.E.2d at 871.)

The applicable standard of review for evaluating the propriety of a trial court's entry of summary judgment is *de novo. Demos v. National Bank* (1991), 209 Ill. App. 3d 655, 567 N.E.2d 1083.

■ In light of the foregoing principles, we conclude the trial court erred in granting summary judgment. Mead's affidavit is inconsistent with numerous parts of his deposition. The conclusions Mead's affidavit and deposition draw are speculative, self-serving and, at times, based on secondhand information. Furthermore, the record is devoid of any documentation to bolster Mead's conclusions. Perhaps the most compelling reason demanding the result we reach today is Mead's statement: "I don't know when this foot switch was sold exactly. *** Nobody would know." This is an issue of fact, which when construed liberally in favor of King, would place him within the limits of the statute of repose. Accordingly, we reverse the order granting summary judgment and remand this cause to the circuit court of Cook County for further proceedings.

Reversed and remanded.

GREIMAN, P.J., and CERDA, J., concur.