ALLSTATE LIFE INSURANCE COMPANY, Plaintiff-Appellant, v. DIANE YURGIL, Defendant-Appellee.

First District (1st Division)   No. 1—92—0660

Opinion filed March 31, 1994.

Carney & Brothers, Ltd., of Chicago (Hubert O. Thompson and Ellen E. Douglas, of counsel), for appellant.

Daniel J. Broderick, of Bloomingdale, and Stoller & Garstki, of Chicago (Steven E. Garstki and Stewart D. Stoller, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Allstate Life Insurance Company (Allstate) appeals an order of the circuit court of Cook County granting defendant Diane Yurgil's cross-motion for summary judgment on Allstate's action to recover a payment made to defendant as the beneficiary of an Allstate life insurance policy.

The record on appeal, compiled largely as a result of the parties' cross-motions for summary judgment, indicates the following facts. Yurgil's father, William Ramm, died on July 25, 1985. On July 30, 1985, Yurgil and her mother, Bertha Ramm, drove to Sun Electric Corporation in Crystal Lake, where William had been employed as an engineer. Yurgil stated in deposition testimony that while she and her mother were at Sun Electric Corporation, a man named Jim Lillie informed Yurgil and Bertha that they were named as equal beneficiaries under a life insurance policy issued by Allstate. Yurgil and Bertha were to receive $36,000 apiece under this policy.

Bertha indicated in deposition testimony that she did not remember much about the meeting because she was upset over the fact that Yurgil alone was to receive certain investments made by William. Indeed, Bertha indicated that she and Yurgil did not speak during the drive to Sun Electric Corporation. Bertha stated that she believed that the life insurance proceeds were hers because "when a

husband dies, the proceeds, everything, is supposed to go to the wife." Bertha was dissatisfied that William had designated Yurgil as a beneficiary. Yurgil indicated in her deposition that the relationship between William and Bertha had been strained for 15 to 20 years.

Yurgil indicated that she contacted Lillie at some point during the next four weeks to request that her portion of the proceeds be sent directly to her house. According to Yurgil, Lillie agreed to this request. However, the record indicates that both $36,000 checks were mailed to Bertha in a single envelope. According to Bertha, she received the checks on September 12, 1985.

Bertha telephoned another of her daughters, Valerie Hartzell, at work. Bertha told Valerie that she had received checks made payable to Yurgil and herself. Valerie told Bertha that she would "come home and take care of it." According to Bertha, Valerie came home and suggested that she would have Yurgil endorse the check made payable to Yurgil. Bertha accepted this suggestion.

According to Yurgil, Valerie came to her house, produced the check and told her she had to sign it. Yurgil asked why she had to sign and noted that the check was made payable to her. According to Yurgil, Valerie stated that the money did not belong to Yurgil. The two became involved in a heated argument. According to Yurgil, Valerie had also been estranged from William, and Valerie kept saying how unfair William had been. Eventually, Yurgil signed the check. Yurgil indicated that she did not feel physically threatened and did not know why she signed the check except that she feared that Bertha and Valerie would not leave her alone. Yurgil indicated that Valerie left immediately after obtaining the signature. Bertha indicated that Valerie returned to her home approximately an hour after she had departed.

The record indicates that Bertha later added her signature to the check made payable to Yurgil. A stamp on the reverse of the check indicates that it was cashed on September 13, 1985. The check made payable to Bertha was cashed on or about September 12, 1985.

On September 24, 1985, Yurgil wrote Lillie a letter requesting a copy of the check made payable to her as well as a list of beneficiaries. The record indicates that Yurgil received a letter from Lillie dated September 30, 1985, instructing Yurgil to contact Allstate. Yurgil then contacted Allstate on October 21, 1985, speaking to Ann Whitmore. In her deposition, Yurgil indicated that she did not remember exactly what she told Whitmore in this conversation. Yurgil stated that she did not remember whether she told Whitmore that she signed the initial check. Yurgil indicated that she told Whitmore that she did not receive her portion of the proceeds and that the

check did not come to her house. Later in her deposition, Yurgil described the substance of the conversation:

"I told her *** that I did not receive the benefits from the check and that the check was signed at that it was—Bertha Ramm had signed it, and is it possible that there could be a stop payment put on it, and could you reissue me the other check because you did not send the first check to me as I requested and I asked her if this could be done.

She said, let me check and see if it's gone through, and I will call you back, and the she called me back, and she said, we have put a stop payment on it. We will reissue another check."

After making this statement, Yurgil again indicated in her deposition testimony that she did not recall the exact conversation she had with Whitmore. Yurgil filed an affidavit in support of her cross-motion for summary judgment on August 13, 1991, that expressly indicates that she had executed the initial check before she called Allstate.

The record contains a letter dated October 31, 1985, from Whitmore to Yurgil. The letter indicates that Allstate placed a stop payment on the check made payable to Yurgil "as you indicated you did not receive the benefits from your mother, Bertha Ramm." The letter further indicated that Allstate sent a replacement check to Yurgil's address under separate cover. The record indicates that the replacement check was deposited into Yurgil's checking account on November 1, 1985.

Allstate contacted Bertha about returning the money. Bertha initially indicated in her deposition that she could not remember when this contact occurred. In response to questioning, Bertha indicated that she "never gave it any thought," but then stated that Allstate had contacted her "inside a month" of September 12, 1985. Bertha indicated that she did not return the money because what she had done was legal.

Allstate requested repayment of the replacement check from Yurgil in a letter dated June 15, 1987, as well as in later correspondence. Yurgil refused to repay the $36,000.

Allstate filed a two-count complaint against Yurgil on February 18, 1988. Count I of the complaint sought restitution for the replacement check; count II alleged wrongful conversion. Yurgil filed an answer with affirmative defenses and a third-party complaint against Bertha, Valerie and Jim Lillie, individually and as an agent of Sun Electric Corporation. Yurgil's third-party complaint contained six counts seeking contribution from Bertha and charging her with unjust enrichment and conversion. Yurgil also charged Valerie with

conspiracy to convert the check and employing duress to obtain Yurgil's endorsement. In addition, Yurgil charged Lillie with negligence.

Allstate moved for summary judgment, arguing that the replacement check was issued due to a mistake of fact, *i.e.*, that Allstate did not know that Yurgil had endorsed the initial check. Yurgil filed a response and cross-motion for summary judgment addressing the mistake of fact theory. Yurgil included an affidavit that expressly stated that she told Allstate she had endorsed the initial check. Yurgil argued that Allstate sought repayment from Bertha and deliberately took the risk that the funds could not be recovered from Bertha. Allstate filed a reply, arguing that the mistake of fact at issue was Allstate's mistaken belief that the initial check had not cleared at the time it issued the replacement check.

Following a hearing on the matter, the trial court denied Allstate's motion for summary judgment, granted Yurgil's cross-motion and found that was no just reason to delay enforcement or appeal of the order. Allstate now appeals.

Summary judgment is properly granted if the pleadings, depositions, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. (*Alop v. Edgewood Valley Community Association* (1987), 154 Ill. App. 3d 482, 484, 507 N.E.2d 19, 21.) In determining whether the movant is entitled to summary judgment, the court must construe the evidence strictly against the movant and liberally in favor of the opponent. (*Loyola Academy v. S&S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 271, 586 N.E.2d 1211, 1215.) Although encouraged as a means to expeditiously dispose of litigation, summary judgment is a drastic measure that should be granted only where the movant's right to relief is clear and free from doubt. *Loyola Academy*, 146 Ill. 2d at 271, 586 N.E.2d at 1215.

■ In this case, Allstate claims there is no genuine issue of material fact regarding whether it operated under a mistake of fact in issuing the replacement check to Yurgil. As a general rule, where money is paid due to a mistake of fact, and payment would not have been made had the facts been known to the payor, such money may be recovered. (*Bank of Naperville v. Catalano* (1980), 86 Ill. App. 3d 1005, 1008, 408 N.E.2d 441, 444.) Allstate claims two such mistakes of fact: (1) that it was mistaken in believing that Yurgil had not signed the initial check made payable to her; and (2) that it was mistaken in believing that the initial check had not cleared when it placed a stop payment order and issued the replacement check.

■ Following the general rule noted above, Allstate is entitled to restitution if it can show that it would not have issued the replace-

ment check but for the alleged mistakes of fact. Yet Allstate does not point to anything in the record that demonstrates that it would not have issued the check if it had known that Yurgil had signed the initial check and that said check had cleared. Allstate did not submit any affidavits of Allstate personnel or corporate documents that establish that the replacement check would not have issued "but for" the alleged mistakes of fact. Thus, the trial court did not err in denying Allstate's motion for summary judgment.

Nevertheless, it does not necessarily follow that the trial court did not err in granting Yurgil's cross-motion for summary judgment. Yurgil claims that Allstate issued the replacement check even though it knew that Yurgil signed the initial check and that said check had cleared. However, the evidence marshalled by Yurgil in support of this claim, construed strictly against her as the cross-movant and liberally in favor of Allstate as the opponent, does not warrant the entry of summary judgment in this case.

For example, Yurgil claims that she told Whitmore that she had signed the initial check. However, the record contains Yurgil's April 25, 1989, deposition, in which she initially stated that she did not remember the substance of her conversation with Whitmore and did not recall telling Whitmore that she had signed the initial check. Later in the same deposition, as quoted earlier, Yurgil discusses the substance of the conversation with Whitmore; this statement seems ambiguous as to whether Yurgil told Whitmore that both she and Bertha had signed the initial check. Even later in the deposition, Yurgil reiterated that she did not recall the exact conversation she had with Whitmore. Two years after the deposition, Yurgil filed an affidavit that expressly indicates that she told Whitmore that she signed the initial check.

Similarly, Yurgil relies on Bertha's testimony that Allstate contacted her about returning the money "inside a month" of September 12, 1985. Yurgil claims that this statement is evidence that Allstate knew Bertha had cashed the initial check even before Yurgil spoke to Whitmore on October 21, 1985. Allstate claims that there would have been no reason for it to contact Bertha about returning the money prior to Yurgil's call. For the purpose of this discussion, it suffices to note Bertha's statements immediately preceding the "inside a month" remark to the effect that she did not remember when she was contacted by Allstate and had never given the matter any thought.

This court has previously reversed a summary judgment that relied on an affidavit that was inconsistent with the affiant's deposition testimony and said deposition testimony also indicated uncer-

tainty about a material issue of fact. (*King v. Linemaster Switch Corp.* (1992), 238 Ill. App. 3d 729, 732, 606 N.E.2d 584, 586-87.) In this case, the record contains no evidence regarding Allstate's actions or procedures and the order relies on the uncertain statements of Bertha and Yurgil. Thus, we conclude that the summary judgment entered in favor of Yurgil was not free from doubt, based on the record presented in this appeal.

For the aforementioned reasons, we reverse the judgment of the circuit court of Cook County and remand the cause for further proceedings.

Reversed and remanded.

BUCKLEY and MANNING, JJ., concur.