JAMES BITTLER *et al.*, Plaintiffs-Appellants, v. DOYEN AND ASSOCI-ATES, INC., Defendant-Appellee.

First District (3rd Division)    No. 1—91—3585

Opinion filed March 31, 1995.

646

Paul G. Hardiman, of Chicago, for appellants.

Elliot R. Schiff, Loretta M. Griffin, and Ann M. Ferguson, all of Chicago, for appellee.

JUSTICE TULLY delivered the opinion of the court:

On March 28, 1991, plaintiffs, James Bittler (hereinafter James) and his wife Barbara Bittler (hereinafter Barbara), filed a fifth amended complaint at law against D.P. Way Corporation, a/k/a D.P. Way Company or D.P. Way Division of Canon Industries, Inc. (here-

inafter D.P. Way), Doyen and Associates, Inc. (hereinafter Doyen), and White & Company, Inc. (hereinafter White). Subsequent to this filing, D.P. Way and White settled their claims with plaintiffs, and on October 18, 1991, the trial court granted summary judgment in favor of the remaining defendant, Doyen. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005 (now 735 ILCS 5/2—1005 (West 1992)).) It is from this order that plaintiffs now appeal pursuant to Supreme Court Rule 301 (134 Ill. 2d R. 301).

For the reasons which follow, we affirm.

## FACTUAL STATEMENT

On June 3, 1984, James sustained personal injuries when he was struck in the head by the tailgate door of an Ultravac vacuum loader, a truck-mounted vacuum loader and cleaner, as it was being lowered by a co-employee. Plaintiffs brought this cause of action to recover damages for injuries suffered by James as a result of this incident and the consequential loss of consortium suffered by Barbara. The complaint sounded in both negligence and strict liability and was brought against D.P. Way, the manufacturer of the Ultravac unit; White, the exclusive sales representative for D.P. Way in northern Illinois and Indiana; and Doyen, an engineering consultant engaged by Commonwealth Edison Company, Inc. (hereinafter Edison), the ultimate purchaser of the Ultravac Unit. Doyen was consulted by Edison on its fugitive dust program at nine fossil fuel stations. Edison previously installed stationary equipment which required mobile vacuum units to serve as a vacuum source at each of the stations. Initially, Edison and Doyen met to discuss Edison's requirements regarding the units. Edison provided Doyen with its specific requirements as to the configuration of the truck chassis, the engine, and the functional requirements for the vacuum loader itself.

Thereafter, Doyen's role was limited to producing final bid specifications under Edison's direction and evaluating bids received for their general conformance with the technical requirements of the specifications. Once the bids were so approved by Doyen, they were turned over to the engineering department at Edison. Edison was solely responsible for deciding which bid to accept. Doyen did not offer any recommendation as to which bid was best nor was Doyen ever requested by Edison to inspect the final truck-mounted vacuum loader for conformance with the bid specifications compiled by Doyen.

Edison chose D.P. Way to design and manufacture the truck-mounted vacuum loader for use in this project. The truck-mounted vacuum loader selected by Edison, the Ultravac, had been designed by D.P. Way several years prior to the compilation of the specifica-

tions drawn by Doyen. In fact, it had been redesigned in 1979 and reintroduced in the marketplace in 1980. Thus, Edison essentially purchased what was an evolved design and not a custom product.

## OPINION

■ We first consider plaintiffs' contention that the trial court erred in granting summary judgment to Doyen under the theory of strict product liability. The question is whether an independent consultant retained by the ultimate purchaser of a product to compile design specifications for the sole purpose of soliciting bids for the manufacture of that product can be held strictly liable in tort. "The applicable standard of review for evaluating the propriety of a trial court's entry of summary judgment is *de novo*." (*King v. Linemaster Switch Corp.* (1992), 238 Ill. App. 3d 729, 732, 606 N.E.2d 584.) It is well-settled law in Illinois that summary judgment is proper only when the pleadings, depositions, affidavits, and admissions on file show that no genuine issue of fact exists and that defendant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005 (now 735 ILCS 5/2—1005 (West 1992)); *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 543 N.E.2d 1304.) "Whether a duty exists is a question of law to be determined by a court [citation], and thus a motion for summary judgment properly addresses the issue of duty." *Grove v. City of Park Ridge* (1992), 240 Ill. App. 3d 659, 661, 608 N.E.2d 421.

■ The doctrine of strict liability, as set forth in section 402A of the Restatement (Second) of Torts (1965) and adopted by the Illinois Supreme Court in *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182, states:

"One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." (Restatement (Second) of Torts § 402A (1965).)

The doctrine's purpose is to impose liability for the loss caused by a defective product on those who create the risk and reap the profits by placing it in the stream of commerce, regardless of any negligence on the part of the manufacturer. *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 338 N.E.2d 857.

■ Illinois cases interpreting *Suvada* and the Restatement have held that all parties in the chain of distribution (*Thomas v. Kaiser*

*Agricultural Chemicals* (1980), 81 Ill. 2d 206, 407 N.E.2d 32) or those who actively participate in placing a defective product into the stream of commerce (*Keen v. Dominick's Finer Foods, Inc.* (1977), 49 Ill. App. 3d 480, 364 N.E.2d 502) could be held liable in an action based on strict liability. Defendants upon whom liability has been imposed include manufacturers, distributors, lessors, retailers, and wholesalers and may also include parties responsible for defects in design. (*Wright v. Massey-Harris, Inc.* (1966), 68 Ill. App. 2d 70, 215 N.E.2d 465.) Additionally, a product licensor can be held strictly liable if such licensor is an integral part of the marketing enterprise, because its participation in the profits reaped by placing the defective product in the stream of commerce presents the same public policy reasons for application of strict liability which supported the imposition of liability on those directly within the chain of distribution. See *Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393, 389 N.E.2d 155.

■ In the case *sub judice*, plaintiffs argue that Doyen is responsible for the defective and unsafe design of the mobile vacuum unit. Plaintiffs assert that the mobile vacuum unit was manufactured by D.P. Way in accordance with the design specifications compiled by Doyen and that because necessary safety features were absent from those specifications, they were also absent from the manufactured unit. Plaintiffs contend that James' injuries are a direct and proximate result of Doyen's failure to include these safety devices in their design specifications. Thus, plaintiffs are essentially arguing that the compilation of design specifications is tantamount to actually designing a product since the manufacturer's blueprints are prepared in accordance with those specifications.

We believe that the plaintiffs misinterpret the significance of specifications to the ultimate design of a product. The purpose of design specifications is to form the basis of the blueprints from which the product will be manufactured. They merely outline the general design elements mandated by the purchaser or user of the product. Therefore, in an indirect way, one who compiles specifications has a hand in the design of the product, but it would be disingenuous to label that party a co-designer. Contrary to the plaintiff's assertion, it does not logically follow that design of the end product is tantamount to design of the instrumentality for which the end product is made.

Specifications are not intended as a substitute for a safe design and manufacture in accordance with the various safety statutes. While all requirements peculiar to the needs of the purchaser must be included in the specifications and therefore the blueprints for manufacture, it is the designer/manufacturer who is in the best posi-

tion to determine if any safety features *in addition* to those listed in the specifications are necessary due to the inherently dangerous nature of the product. In this case, Doyen merely assembled a list of attributes which Edison required in the mobile vacuum units for the purposes of eliciting bids for manufacture. We do not believe this activity approximates the responsibility of designing a safe product. That duty was intended to and did in fact lie with the manufacturer of the product, D.P. Way.

The specifications themselves are demonstrative of the fact that the onus for safe and proper design was always intended to lie with D.P. Way.

Section 125 of the specifications provides:

"2.0 *Work Included*

2.1 The Contractor shall *design,* engineer, fabricate, test and deliver the following work:

2.1.1 Nine (9) truck-mounted vacuum loaders—section 2005." (Emphasis added.)

Section 145 of the specifications provides:

"1.0 The contractor shall submit the following documents to the Consulting Engineer for approval. Owner or engineer's approval will be for *general detail only* and will not relieve the Contractor of all responsibility for errors of dimensions, quantities, details or omissions." (Emphasis added.)

The general conditions portion of the specifications, under the heading "Warranties," provides:

"(a) Contractor warrants that the Equipment furnished to Purchaser under the Contract is of a new manufacture and will *be free from defects in design,* workmanship and materials and will be suitable for its intended purpose as specified in the Contract." (Emphasis added.)

It is clear that the specifications compiled by Doyen defined the general parameters of the desired product and contemplated the manufacturer to design a product which would fulfill Edison's requirements. The plain language of the specifications indicates that the party awarded the contract was responsible for designing the mobile vacuum unit.

Moreover, the evidence presented to the trial court revealed that D.P. Way did not provide Edison with a product customized to the bid specifications drawn by Doyen but rather recognized that its previously designed Ultravac unit fulfilled Edison's requirements. The particular model Ultravac purchased by Edison was redesigned in 1979 and introduced into the marketplace in 1980. By D.P. Way's own admissions, the Ultravac units purchased by Edison were of an evolved design and were not a custom-manufactured product.

Finally, plaintiffs argue that Doyen should be held strictly liable as an integral part of the chain of distribution because it "reaped a benefit from [placing the units in the stream of commerce] by earning approximately $10,000.00." We believe this reflects an inaccurate interpretation of our supreme court's rationale in *Connelly*. (*Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393, 389 N.E.2d 155.) The court in *Connelly* emphasized the fact that *profits* reaped by placing the product in the stream of commerce were shared by the defendant. In this case, Doyen did not in any way participate in the profits derived from marketing the Ultravac units. It merely received $10,000 as compensation for services provided to Edison for the compilation of the specifications. This does not amount to participating in profits from the manufacture of the Ultravac.

Because Doyen did not design the mobile vacuum unit or occupy any other role within the chain of distribution but merely performed the task of compiling technical specifications for Edison, we hold Doyen is not liable in strict product liability. Therefore, the trial court correctly granted Doyen's motion for summary judgment.

We next consider plaintiffs' contention that the trial court erred in granting summary judgment for Doyen as to their claims of negligence. Plaintiffs argue Doyen owed a duty to exercise due care for the safety of foreseeable third parties in its design of the mobile vacuum unit. Therefore, they claim a genuine issue of material fact exists as to whether Doyen's alleged breach of this duty was a proximate cause of James' injuries.

Specifically, plaintiffs argue Doyen was negligent in that it: (1) failed to have competent and knowledgeable persons prepare the plans and specifications of the vacuum loader and cleaner and review the bids for the vacuum loader and cleaner; (2) failed to include various safety devices, alarms, controls and guards in the specifications; (3) failed to include requirements that there be adequate warnings and instructions concerning safe operation and maintenance of the vacuum loader and cleaner and its safety bar in the specifications; and (4) failed to make any and/or an adequate inspection of the Ultravac to determine how it operated and what safety devices, warnings and instruction should be specified.

■ A cause of action based on negligence requires that the plaintiff establish the existence of a duty, a breach of that duty and that the breach proximately caused the injury for which the action was brought. (*Filipetto v. Village of Wilmette* (1985), 135 Ill. App. 3d 781, 482 N.E.2d 358.) "Whether a duty exists is a question of law, and depends upon whether the parties stood in such a relationship to one another that the law imposes an obligation on the defendant to act

reasonably for the protection of the plaintiff." (*Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 47, 566 N.E.2d 1365; *Grove v. City of Park Ridge* (1992), 240 Ill. App. 3d 659, 608 N.E.2d 421.) In determining whether a duty does in fact exist, a court must consider the foreseeability that a defendant's conduct will result in injury to the plaintiff and the concomitant burden to defendant of imposing a duty along with the consequences of imposing the burden. *Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 566 N.E.2d 1365.

■ Illinois law holds that a designer of a product owes a duty to exercise reasonable care to foreseeable third parties. (*Harms v. Caterpillar Tractor Co.* (1980), 80 Ill. App. 3d 262, 399 N.E.2d 722.) However, we have already concluded that Doyen was not the designer of the Ultravac unit. Consequently, Doyen cannot in any way be culpable as a proximate cause of the injuries sustained by James.

■ As to the plaintiffs' charges that Doyen failed to inspect the Ultravac unit to determine what safety devices, warnings or instructions should be specified, we hold that Doyen was not bound by a duty to so inspect. The scope of Doyen's duty to inspect would be determined either by the contract which existed between it and Edison or in the absence of a contract, the conduct of the parties. The only written document which existed between the parties was a purchase order which read:

"Preliminary study and drawings for the installation of vacuum cleaning systems in all coal-handling areas at various stations."

This purchase order was subsequently modified but only as to the price terms and not the scope of work contemplated. We do not believe that this writing amounts to a contract evidencing an intention that Doyen design a mobile vacuum unit for Edison. Quite to the contrary, this purchase order was more than likely prepared by the engineering department at Edison to present to accounts payable so that payment for Doyen's services would be forthcoming.

Furthermore, plaintiffs did not present any evidence which indicated that Doyen had any responsibility regarding the mobile vacuum units beyond preparing the specifications for Edison. Therefore, we hold the trial court correctly entered summary judgment for Doyen as to plaintiffs' claims of negligence.

In light of the foregoing, the judgment of the circuit court of Cook County is affirmed in all respects.

Affirmed.

RIZZI and CERDA, JJ., concur.