# In the

# United States Court of Appeals

## For the Seventh Circuit

———

No. 04-1905

EMPLOYERS INSURANCE OF WAUSAU,

*Plaintiff-Appellee*,

*v.*

TITAN INTERNATIONAL, INC. and
  DYNEER CORPORATION,

*Defendants-Appellants*.

———

Appeal from the United States District Court
for the Central District of Illinois.
No. 02 C 3060—**Jeanne E. Scott**, *Judge*.

———

ARGUED DECEMBER 8, 2004—DECIDED MARCH 3, 2005

———

Before FLAUM, *Chief Judge*, and POSNER and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*.  The appeal in this diversity suit presents issues of appellate jurisdiction and Illinois contract law in the setting of a dispute over insurance coverage. Wausau had issued a number of workers' compensation, auto liability, and general liability policies covering the defendants. The policies contained provisions for adjusting the premiums retrospectively ("retros") if the loss experience differed substantially from what the parties

had expected when the policies were negotiated; such provisions are common, e.g., *Casualty Ins. Co. v. Hill Mechanical Group*, 753 N.E.2d 370, 372 (Ill. App. 2001); *Pre-Fab Transit Co. v. Northbrook Property & Casualty Ins. Co.*, 600 N.E.2d 866, 869 (Ill. App. 1992); *Edward Gray Corp. v. National Union Fire Ins. Co.*, 94 F.3d 363, 367-68 (7th Cir. 1996); *Liberty Mutual Ins. Co. v. Nippon Sanso K.K.*, 331 F.3d 153, 157 (1st Cir. 2003), in situations in which risk is difficult to determine in advance. 5 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 69.15 (3d ed. 1996). The price of an insurance policy is a function of the risk that the loss insured against will occur; if that risk cannot be calculated, the price will be arbitrary; hence the need for a retroactive adjustment.

Because of a computer error in calculating the retro adjustment for 2000, Wausau overlooked losses that it had incurred under the policies and as a result mistakenly sent the defendants a check for $239,132; when it discovered the mistake it demanded the return of the money plus $3,987 in retrospectively adjusted premiums due from the defendants. They refused both demands, and Wausau brought this suit for the sum of the two amounts, $243,119. We'll call this the "base amount." On November 14, 2003, the district court granted summary judgment for Wausau and entered a judgment for the base amount. Both sides filed timely Rule 59(e) motions to amend the judgment. The defendants wanted the judgment for Wausau thrown out. The plaintiffs wanted prejudgment interest added to the base amount. They also wanted an award of costs, and they demanded it in the same motion, but they correctly cited Fed. R. Civ. P. 54(d)(1) as the basis for the demand. Unlike an award of prejudgment interest, an award of costs does not alter or amend the judgment and so is not within the scope of Rule 59(e). *Buchanon v. Stanships, Inc.*, 485 U.S. 265,

268-69 (1988) (per curiam); *United States v. Deutsch*, 981 F.2d 299, 301 n. 2 (7th Cir. 1992); *Lorenzen v. Employees Retirement Plan of Sperry & Hutchinson Co.*, 896 F.2d 228, 231 (7th Cir. 1990).

On February 4, 2004, the district court issued an order denying the defendants' motion for reconsideration but granting Wausau both the prejudgment interest and the costs that it had sought. The defendants did not appeal within 30 days of that order. On March 11, the district court issued a judgment order captioned "Amended Judgment in a Civil Case" and described in the body of the order as a judgment entered pursuant to Fed. R. Civ. P. 58. The judgment was for the base amount, the prejudgment interest, and the costs, all in the amounts specified in the February 4 order. The defendants appealed within 30 days of the March 11 judgment. Wausau argues that that was too late.

Rule 58 requires that "every judgment and amended judgment must be set forth on a separate document" (separate from the ruling or opinion pursuant to which the judgment is being entered) except, so far as bears on this case, "an order disposing of a motion . . . to alter or amend the judgment, under Rule 59." Fed. R. Civ. P. 58(a)(1)(D). If, as in the case of such an order, no separate document is required, the time of entry of judgment (hence the time when the period within which to appeal begins to run) is when the order is entered on the court's docket, while if a separate document *is* required, the time of entry of judgment is when that document is docketed. Fed. R. Civ. P. 58(b). (If, though required, a separate document is for some reason not issued, the time of entry of judgment is 150 days after the judgment was docketed. Fed. R. Civ. P. 58(b)(2)(B).) Wausau argues correctly that insofar as its postjudgment

motion sought merely an award of costs, the filing of the motion did not toll the time for the defendants to appeal from the original judgment, Fed. R. App. P. 4(a)(1)(A), (4)(A); *Buchanon v. Stanships, Inc.*, *supra*, 485 U.S. at 268-69; *Lorenzen v. Employees Retirement Plan of Sperry & Hutchinson Co.*, *supra*, 896 F.2d at 231; *Moody National Bank v. GE Life & Annuity Assurance Co.*, 383 F.3d 249, 250 (5th Cir. 2004), the one that had been entered on November 14, 2003. What did toll the time for appeal, says Wausau, were the two Rule 59(e) motions. But they were disposed of on February 4. Wausau concludes that since an order disposing of a Rule 59 motion is not required to be set forth on a separate document, the 30 days within which the defendants had to file a notice of appeal started to run on February 4.

But the district judge entered an amended judgment on March 11; and Rule 58 requires, as we know, that every amended judgment be set forth on a separate document—and when a separate document is required, the time to appeal runs from the date on which that document was docketed, provided it is docketed within 150 days after the judgment, a condition satisfied here.

The only way to reconcile the requirement that an amended judgment be set forth in a separate document with the exception to that requirement for an order disposing of a Rule 59(e) motion is by reading "disposing of a motion" as "denying a motion." The reading is supported, though muddily, by the Committee Note to the 2002 Amendment to Rule 58. The note states that "if disposition of the [Rule 59(e)] motion results in an amended judgment"—as it did here—"the amended judgment must be set forth on a separate document," as it was, on March 11. Granting a motion is one way of "disposing" of it, but when a motion to amend a judgment is granted, the result is an amended

judgment, so the rule becomes incoherent if "disposing" is read literally, for then the order granting the motion both is, and is not, an order required to be set forth in a separate document. Nonsensical, or as here logically impossible, interpretations of statutes, rules, and contracts are unacceptable. *Clinton v. City of New York*, 524 U.S. 417, 428-29 and n. 14 (1998); *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 68-70 (1994); *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 976 (7th Cir. 2004); *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 284-85 (7th Cir. 2002); *Hughey v. JMS Development Corp.*, 78 F.3d 1523, 1529-30 (11th Cir. 1996). So we are driven to interpret "disposing" as "denying," not "granting or denying," and thus we conclude that the defendants' appeal was timely, because it was an appeal from an amended judgment and thus from a grant rather than a denial of a Rule 59(e) motion. And so we proceed at last to the merits.

The defendants do not doubt that Wausau made a computational error but for which it would have charged them the additional $3,987 in premiums rather than sending them the huge refund check. But they say that Wausau failed to prove that the "correct" amount was actually compliant with the insurance policies. Each state specifies the method that the insurer must use to compute rates, e.g., N.Y. Ins. Law § 2304(a); 215 ILCS 5/456-5/458, 5/462b; Ind. Code §§ 27-1-22-3 through -5, including retros, *Sandwich Chef of Texas, Inc. v. Reliance National Indemnity Ins. Co.*, 319 F.3d 205, 211-13 (5th Cir. 2003), and the defendants insist that Wausau's burden of proving that their refusal to honor its retro demands required Wausau to prove that it used the correct "state factors" (as the methods specified by states for computing rates are called) in calculating the amount that the defendants owed it.

The argument misunderstands the burden of proof in a contract case. If the seller presents a bill to the buyer, the buyer refuses to pay, and the seller sues, the seller's initial burden of production merely requires that it submit the contract and show how the amount that it is seeking is derived from the contract's terms. See, e.g., *Alco Standard Corp. v. F & B Mfg. Co.*, 265 N.E.2d 507, 509 (Ill. App. 1970), reversed on other grounds, 281 N.E.2d 652 (1972); *Long v. Reeves Southeastern Corp.*, 576 S.E.2d 641 (Ga. App. 2003); *Collins v. Guinn*, 102 S.W.3d 825, 836 (Tex. App. 2003); *Campbell, Maack & Sessions v. Debry*, 38 P.3d 984, 991 (Utah App. 2001). Wausau did that. It showed how the terms of the policies, in light of the losses that it had experienced under the policies, required the retrospective premium adjustment that it sought, so that the defendants' refusal to comply was a breach. The listed terms included each state numerical factor used to compute the retrospective premium adjustments. If the defendants thought that the numerical factors were incorrect—were not what state law prescribed—it was their burden to present evidence of this fact, as they could easily have done, since the factors are derived from public acts of the state agencies that regulate insurance. The defendants did not do this, insisting instead that the burden of proof was on Wausau. That amounts to the frivolous argument that to prove a breach of contract the plaintiff cannot rely on what the contract says but must prove that every term corresponds to some true fact in the world. So if the contract is dated March 11, 2004, the plaintiff must present evidence that, yes, indeed, that is when the contract was signed. The enforcement of contracts would be paralyzed by any such requirement.

Although it should thus have been easy for the defendants to obtain the information they needed in order to verify the

accuracy of Wausau's computations, our decision would not be altered if, as they claim, they needed discovery from Wausau to obtain it and Wausau dragged its feet. The defendants never sought a court order compelling the production of the information, and such an order is a prerequisite to imposing a sanction for discovery abuse. Fed. R. Civ. P. 37(b)(2); *Halas v. Consumer Services, Inc.*, 16 F.3d 161, 164 (7th Cir. 1994); *In re Williams*, 156 F.3d 86, 89 n. 1 (1st Cir. 1998); *Shepherd v. American Broadcasting Cos.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995). And before such an order can be entered the movant must certify that he "in good faith conferred or attempted to confer" with his recalcitrant opponent. Fed. R. Civ. P. 37(a)(2)(A), (d); *Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 186-87 (3d Cir. 2003). The defendants didn't do that either.

The issue of burden of proof is fogged somewhat by Wausau's insistence that illegality is an affirmative defense to the enforcement of a contract and of course defendants have the burden of proving affirmative defenses. That is true but irrelevant. The issue here is not illegality. No one supposes that any of the insurance policies in issue in this case violates the law or public policy of any state and is therefore unenforceable. The issue is the meaning of the contracts, which depends in part on the state factors because they are incorporated in the contracts by operation of law. If Wausau used the wrong state factors, then it is not contractually entitled to the retrospective premiums it is seeking; that is all.

Wausau has an alternative theory of entitlement to the return of the $239,132 that it sent the defendants in error: restitution for money paid by mistake. *Illinois Graphics Co. v. Nickum*, 639 N.E.2d 1282, 1293 (Ill. 1994); *Allstate Life Ins. Co. v. Yurgil*, 632 N.E.2d 282, 285 (Ill. App. 1994); *Bank of*

*Naperville v. Catalano*, 408 N.E.2d 441, 444 (Ill. App. 1980). The defendants argue that it was a careless mistake and therefore restitution should be denied. There is no "therefore." Probably the mistake *was* careless; but the law does not permit a person to keep money that he has received by mistake, just because the mistake is careless. *St. Paul Federal Savings & Loan Ass'n v. Avant*, 481 N.E.2d 1050, 1057 (Ill. App. 1985); *Bank of Naperville v. Catalano*, *supra*, 408 N.E.2d at 445; *Century Building Partnership, L.P. v. SerVaas*, 697 N.E.2d 971, 974 (Ind. App. 1998). Such a rule would make people too careful, penalizing them for mistakes that caused nobody any harm and so should not be penalized at all—the defendants do not argue that having to return their windfall will cause them harm beyond the natural disappointment that one is bound to feel at having to cough up money to someone else, for whatever reason. The law is not finders keepers, unless the property found has been abandoned, which is to say deliberately relinquished, not merely lost or misplaced. *Hendle v. Stevens*, 586 N.E.2d 826, 833 (Ill. App. 1992); *Kahr v. Markland*, 543 N.E.2d 579, 582 (Ill. App. 1989); *Michael v. First Chicago Corp.*, 487 N.E.2d 403, 408-09 (Ill. App. 1985). It would be absurd to suppose that if Wausau owed the defendants $1 and by the careless mistake of one of its clerks issued them a check for $1 million, they could keep the $1 million because the mistake was a careless one. But that is their argument.

Finally, since the suit was for a precisely calculable amount of money, the district court was acting in conformity with Illinois law in awarding the plaintiff prejudgment interest. 815 ILCS 205/2; *Lyon Metal Products, L.L.C. v. Protection Mutual Ins. Co.*, 747 N.E.2d 495, 510 (Ill. App. 2001); *Ervin v. Sears, Roebuck & Co.*, 469 N.E.2d 243, 250

(Ill. App. 1984); *Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1157 (7th Cir. 1989) (Illinois law).

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*