[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14545
Non-Argument Calendar
_____

D.C. Docket No. 9:10-cv-81026-KLR


SUITE 225, INC,

                                             Plaintiff-Appellant,

versus

LANTANA INSURANCE LTD.,

                                             Defendant,

STONINGTON INSURANCE COMPANY,

                                             Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 2, 2015)

Before ED CARNES, Chief Judge, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Suite 225, Inc. appeals the district court's judgment granting Lantana Insurance Ltd.'s Rule 60(b) motion.[1]  Suite 225 contends that Lantana's Rule 60(b) motion was either untimely filed or was not filed within a reasonable time.  It also contends that Lantana failed to present clear and convincing evidence of fraud or of fraud that actually hindered Lantana from thoroughly investigating and appraising Suite 225's insurance claim.  Alternatively, Suite 225 contends that it is entitled to an evidentiary hearing.

## I.

Suite 225 began operating a restaurant in Lake Worth, Florida in 2003. Douglas Peters was the sole owner, and his self-described approach to running the restaurant was "hands-off."  On December 10, 2009, Peters sent an email to his landlord, Love Realty.  The email states that "[t]ime is of the essence."  It refers to an earlier conversation that Peters had with the Love Realty's CEO, Burt Handelsman, and asks for a rent reduction:

> I ran the scenarios by [Handlesman].  We will either stay and re-
> negotiate to redo the restaurant and concept after a 3 month closing
> and renovation with a new hands on partner or we can auction off the
> contents and negotiate a GOOD GUY EXIT.  I have made a yeomen
> effort which has included going into my pocket for the last 2 years to

---

[1] Lantana Insurance Ltd. is now known as Stonington Insurance Co., but for the sake of simplicity, this opinion will refer to the company as Lantana.

the tune of $186,000 plus.  As I explained to [Handlesman] there is nobody who will survive at this location with the triple net fees . . . that are in place today . . . .  I am asking for an answer — I can't even make it through season with the concept I have now and l am going to lose my proposed partner investor who is willing to pay for all the renovations into the inside and out of the location if I don't get an answer from [Handlesman].  I . . . would appreciate it happening asap, prior to next months rent being due.  . . . [T]his is very stressful to myself which is affecting my whole family.

Doc. 43-9 at 2.  Two weeks later, Handelsman sent Peters a letter on Love Realty letterhead stating that the financial terms of the lease would be modified.  Handelsman's letter stated:

> We agree that you may deduct from each bill, which will be sent to you, as if the original Lease were in full force and effect without this modification, the sum of $2,500 each month from the payment required for rent . . . for the duration of your Lease.  Said reduced sum will be accepted as full payment thereunder.
>
> It is my understanding that you will be modifying the restaurant for a new concept for which this concession has been granted . . . .

Doc. 43-9 at 3.  The letter was signed "Agreed and Consented to" by Peters with a handwritten date of "12-23-09" next to his signature.[2]

On January 8, 2010, Peters sent an email to Love Realty about suspending garbage service during Suite 225's upcoming closure for renovation.  That email stated:  "[P]lease update me on our garbage discussion.  I am planning to shut down in less than 10 days.  [T]his whole week we did less than 2,000 in business!"

---

[2] The letter, which stated that it was sent by email and by regular mail, was dated that same day.

3

Three days later, on Monday, January 11, 2010, the restaurant was closed for the day.  When restaurant employees arrived to open it the next day, they discovered that a pipe had burst in one of the bathrooms, and the restaurant was flooded.  The damage was extensive, and the restaurant could not operate until repairs were made and equipment was replaced.

Peters filed an insurance claim with Lantana, submitting a proof of loss on March 16, 2010.  During the claims process, Lantana investigated and determined that the damage and related business interruption were covered by the policy.  Lantana offered to settle, but Peters thought that the amount offered was inadequate and called for an appraisal by an independent umpire according to the terms of the policy.  In connection with the insurance claim, Peters had three examinations under oath, and those occurred on May 24, 2010, June 23, 2010, and December 5, 2012.  In the first examination he testified that the rent for the restaurant had not been abated and that he had never planned to change the business model or "theme" of the restaurant.  He did not mention his December 2009 and January 2010 emails to Love Realty or Love Realty's December 2009 letter agreeing to reduce amount of monthly rent.  Nowhere in his 2010 testimony did Peters acknowledge the planned renovation to "redo the restaurant and concept" or the landlord's agreement to reduce the monthly rent.

4

Lantana would not agree to an independent appraisal, and in July 2010 Peters filed in state court a petition to compel appraisal. Lantana removed the case to federal district court, and the court later granted Peters' petition. After that, an appraisal panel determined that Suite 225's damages totaled $543,927, which included a business interruption loss of $289,888.45. On November 15, 2011, the district court affirmed the appraisal award and entered judgment for the total amount in favor of Peters.

About three weeks later, the parties filed a joint motion to modify the judgment or in the alternative for relief from the judgment. The motion sought to reduce the total amount awarded from $543,927.09 to $217,416.34 to account for the amount Lantana had already paid Suite 225 under the appraisal award. The motion also asked for the prejudgment interest to run from 30 days after the date of the appraisal award in accordance with Florida law and the terms of the policy. The court granted the motion and entered an Amended Final Judgment on December 12, 2011. Based on the judgment in its favor, Suite 225 filed a separate action against Lantana alleging bad faith.

On December 7, 2012, just short of a year after the amended final judgment was entered on the appraisal award, Lantana filed a Rule 60(b)(3) motion for relief from judgment. It contended that during the bad faith action, documents produced by third parties during discovery revealed that Peters had made material

5

representations and omissions that amounted to fraud and that foreclosed any coverage under the policy. Among other things, Lantana specifically pointed to the communications between Peters and his landlord addressing the financial troubles of the restaurant, the plan to close it for renovation in order to change its "concept," and the agreement for a reduction in the amount of monthly rent. Lantana argued as a result of Peters' material misrepresentations the policy was void by its express terms.

Suite 225 opposed the motion, and the district court held a hearing. After the hearing, the court issued an order finding that Lantana's Rule 60(b) motion had been filed within a year of the court's December 12, 2011 judgment, which was the final judgment, and that the motion was filed within a reasonable time. The court referred the matter to a magistrate judge to issue a report and recommendation on the issue of whether the appraisal award was procured by a materially fraudulent insurance claim by Suite 225. The court left it to the magistrate judge's discretion whether to hold another hearing and to receive additional evidence.[3]

The magistrate judge issued a report finding that Lantana had "established by clear and convincing evidence that Douglas Peters, on [Suite 225's] behalf, systematically engaged in a pattern of making material misrepresentations to prevent [Lantana] from learning Peters' plan to renovate the restaurant which may

---

[3] The order stated that the magistrate judge was "to conduct a hearing and to receive additional evidence, as necessary." Doc. 63 at 3 (emphasis added).

6

have exposed a possible motive and resulted in further investigation into the cause of the flood." The report also found that Peters had "sought to prevent [Lantana] from establishing that the covered amount of Business Interruption loss was actually less than [Suite 225] claimed." It concluded that "[b]ased on this fraud, [Suite 225] is not entitled to coverage, and the policy should be deemed void." The report emphasized that Peters had made "the consistent and repetitive decision . . . to hide the rent reduction from his insurer, a variety of public and independent appraisers, and this Court."

The report rejected as not credible Peters' testimony in December 2012 that failing to reveal the rent reduction during the claims process was "an oversight," explaining:

> Peters' contention that the rent reduction somehow slipped his mind during the claims process, only weeks after receiving it, is belied by his [December 2009] email to Love Realty, wherein he (1) admitted to spending nearly $200,000.00 of his own money to keep the restaurant afloat, (2) frantically insisted upon a rent reduction (under threat of executing a "good guy exit"), and (3) made an emotional plea to alleviate the stress on his family. Clearly, this rent reduction was extremely important to Peters and given the fact that all of these events, including the preparation of the Sworn Proof of Loss, occurred in such quick succession, the Court finds that the omission was knowing and intentional.

Doc. 81 at 10. The recommendation was to grant Lantana's Rule 60(b) motion. The district court accepted that recommendation, adopted the magistrate judge's report, vacated its earlier judgment against Lantana, declared the policy void due to

7

material misrepresentation, and entered a new judgment in favor of Lantana.  This is Suite 225's appeal.

## II.

"We review the grant of relief under Rule 60(b) for an abuse of discretion." AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc., 579 F.3d 1268, 1270 (11th Cir. 2009).  Under that standard, "we affirm unless we determine that the district court applied an incorrect legal standard, failed to follow proper procedures in making the relevant determination, or made findings of fact that are clearly erroneous." Lugo v. Sec'y, Fla. Dep't of Corr., 750 F.3d 1198, 1207 (11th Cir. 2014).

## A.

"Rule 60(b) is the procedural means by which a party may seek relief from a final judgment." Doe v. Drummond Co., 782 F.3d 576, 612 (11th Cir. 2015) (quotation marks omitted).  A Rule 60(b) motion for relief from a judgment based on "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party," Fed. R. Civ. P. 60(b)(3), must be "made within a reasonable time" and at the latest "no more than a year after the entry of the judgment," Fed. R. Civ. P. 60(c)(1).  Suite 225 first contends that Lantana's Rule 60(b) motion is untimely because, although it was filed within a year of the December 12, 2011 amended final judgment, it was not filed within a year of the

8

November 15, 2011 "final judgment." The November 15 judgment is the one that the parties jointly asked the court to alter or amend.

Rule 60(b) is a vehicle for relief from a "final judgment." Fed. R. Civ. P. 60(b). When the relief is sought based on an opposing party's fraud, misrepresentation, or misconduct, the Rule 60 one-year clock starts running based on "entry of the judgment." Fed. R. Civ. P. 60(c)(1). A judgment is "any order from which an appeal lies." Fed. R. Civ. P. 54(a).

In the present case, an appeal from the court's November 15 order could have been filed, but after the parties timely filed their motion to alter or amend that judgment, the November 15 order was no longer immediately appealable. See Green v. Drug Enforcement Admin., 606 F.3d 1296, 1300 (11th Cir. 2010) ("A timely filed Rule 59(e) motion to alter or amend a judgment (among other motions) tolls the time limit in which to appeal."). If Lantana had filed a notice of appeal after the district court entered its November 15 order, that notice would have merely served as a placeholder until the parties' motion to alter or amend was resolved. See, e.g., Narey v. Dean, 32 F.3d 1521, 1524 (11th Cir. 1994) ("[A]n otherwise timely notice of appeal filed before the disposition of a Rule 59 motion is not voided but instead merely lies dormant while the motion is pending, and the notice of appeal becomes effective as of the date of the order disposing of the Rule 59 motion.").

9

Because the court granted the parties' motion to alter or amend and entered an amended judgment on December 12, its new judgment in effect vacated the November 15 judgment.  Cf. Empl'rs Ins. of Wausau v. Titan Int'l, Inc., 400 F.3d 486, 489 (7th Cir. 2005) (stating that "when a motion to amend a judgment is granted, the result is an amended judgment" and holding that the time to appeal ran from the date that the amended judgment was entered on the docket).  Lantana's Rule 60(b)(3) motion was timely filed within a year of the December 11 final judgment.

### B.

Suite 225 next contends that even if the Rule 60(b)(3) motion was filed within a year of the final judgment, it was not filed within a "reasonable time," as the rule requires.  The district court found that until November 30, 2012, discovery in the parties' separate bad faith action was ongoing.  Third party discovery in that case produced the documents that revealed the plan to shut down the restaurant for renovations in order to create a new "concept," and it revealed evidence of an agreement for a rent reduction.  Peters' deposition in the bad faith lawsuit was on December 5, 2012.  In that deposition he testified that the agreement to reduce the rent was not revealed earlier because of an "oversight."

Two days after Peters gave that testimony, Lantana filed its Rule 60(b)(3) motion.  The magistrate judge's report, which the district court adopted, found that

10

it was "evident that Peters' misrepresentations to [Lantana], the appraisal panel and [the] Court were not merely an 'oversight,' but an intentional deception." The record supports that finding. The district court did not abuse its discretion by finding that after Lantana discovered the evidence of those omissions and misrepresentations, it filed a Rule 60(b)(3) motion within a reasonable time.

### C.

Suite 225 also contends that, even if Lantana's Rule 60(b) motion was timely, the district court abused its discretion by finding that Lantana had presented clear and convincing evidence of fraud and that Lantana had shown it was prevented from fully litigating its case in the appraisal proceedings. Parties seeking relief from a judgment under Rule 60(b)(3) "must prove by clear and convincing evidence that the adverse party obtained the verdict through fraud, misrepresentations, or other misconduct," and that as a result they were prevented from fully presenting their case. Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1309 (11th Cir. 2003).

Suite 225 does not dispute that Peters made omissions and misrepresentations because it cannot dispute that. It cannot dispute that Peters did not disclose that he planned to shut down the restaurant for renovations just before the flood occurred. It cannot dispute that Peters intended to change the restaurant

11

"concept" during renovations to try to improve business.  It cannot dispute that Peters did not disclose the agreement with the landlord to lower the rent.

Instead of taking issue with the indisputable evidence, Suite 225 essentially argues that those omissions did not matter.  It argues that even though the planned renovations were not disclosed, Peters did testify during the appraisal process that business at the restaurant had not been good for the past couple of years.  It argues that Lantana could have investigated the restaurant's finances more thoroughly.   It argues that even if there was a plan to change the restaurant "concept," there was never a plan to change its "theme," which is what Peters was asked about during his 2010 examination under oath.  It argues that even though the rent reduction agreement was not disclosed, it did not matter because, as it turned out, the rent was never actually reduced.[4]

The magistrate judge's report and recommendation, which the district court adopted, observed that "[e]ven putting aside the uncanny coincidence of the pipe burst occurring the first time the restaurant had been closed in weeks, and within days of when Peters was planning to shutter the restaurant for a complete renovation," the evidence showed that Peters intentionally deceived Lantana, the appraisal panel, and the court.  That evidence was weighed.  Credibility

---

[4] Suite 225 asserts that the flooding damage "occurred during the month the rent reduction was to take effect, and the landlord grew impatient with the length of the adjustment process and business closure, eventually demanding" that Suite 225 pay the full amount of the rent.  Br. of Appellant at 23.

determinations were made.  Those findings were not in Peters' favor, and they were not clearly erroneous.  The report also found "absurd" Suite 225's argument that Lantana should have conducted a more thorough investigation and noted that "the insurer is entitled to rely on the representations of an insured, without checking all its files to determine if the insured is committing a fraud."  Schrader v. Prudential Ins. Co. of Am., 280 F.2d 355, 362 (5th Cir. 1960).  We agree.

The district court did not abuse its discretion by granting Lantana's Rule 60(b) motion.[5]

**AFFIRMED.**

---

[5] Suite 225 also contends that the magistrate judge should have conducted an evidentiary hearing.  The district court held a hearing on the Rule 60(b) motion.  In referring the matter to the magistrate judge for a report and recommendation, the court's order stated that another hearing could be held to receive additional evidence "as necessary."  In light of the clear and convincing evidence in the record, it was not an abuse of discretion to determine that another hearing was unnecessary.  See Lugo, 750 F.3d at 1207 ("A district court's decision to grant or deny an evidentiary hearing in a Rule 60(b) proceeding is . . . reviewed only for an abuse of discretion.").