**ARCHER–DANIELS–MIDLAND COMPANY, Reidy Terminal, Inc., ADM/Growmark River System, Inc., American River Transportation Co., ADM Milling Co., Collingwood Grain, Inc., Tabor Grain Co., Plaintiffs,**

v.

**PHOENIX ASSURANCE COMPANY OF NEW YORK, Commonwealth Insurance Company, Navigators Insurance Company, Albany Insurance Company, Hartford Fire Insurance Company, Defendants.**

No. 95–CV–4001–JLF.

United States District Court,
S.D. Illinois.

Aug. 4, 1997.

---

See also, 936 F.Supp. 534.

Michael J. Kehart, A. James Shafter, Kehart, Shafter & Webber, P.C., Decatur, IL, Aubrey M. Daniel, III, James W. Shannon, Jr., Philip A. Sechler, J. Gordon Seymour, Williams & Connolly, Washington, DC, for Plaintiffs.

Maynerd I. Steinberg, Daniel J. Zollner, Lord, Bissell & Brook, Chicago, IL, Carl L. Favreau, Campbell, Black, Carnine & Hedin, Mt. Vernon, IL, Eric C. Young, Dunham, Boman & Leskera, East St. Louis, IL, Harry P. Cohen, Richard M. Appel, Michael Verde, Steven E. Goldman, Kathleen E. Schaaf, Rosenman & Colin, New York City, Donald V. Ferrell, Jelliffe, Ferrell, Morris, Doerge & Foster, Harrisburg, IL, Charles M. Fraenkel, Leahy, Eisenberg & Fraenkel, Chicago, IL, for Defendants.

### *MEMORANDUM AND ORDER*

FOREMAN, District Judge:

Before the Court is a Motion for Partial Summary Judgment under the DIC Policies Relating to Post–October 1, 1993 Raw Material Losses filed by defendants Phoenix and Commonwealth (Doc. No. 91). Defendants Navigators and Albany have joined in this motion. Plaintiffs have filed a response (Doc. No. 120) and defendants have filed a Reply (Doc. No. 125). This Court has juris-

diction over this matter pursuant to 28 U.S.C. § 1332.

## I. *Introduction.*

In the Summer of 1993 the Mississippi River and its tributaries experienced unprecedented flooding that affected nine Midwestern states. Twenty million acres of farmland were damaged, resulting in $6.5 billion in crop damage (See Doc. 35, Tab 28 at A172)—(The Great Flood of 1993 Post–Flood Report U.S. Army Corps of Engineers September 1994). Total damage from the flood is estimated to be between $15 and $20 billion. *Id.* River, road, and rail transportation systems were disrupted on a large scale. *Id.*

Archer Daniels Midland Company and its subsidiaries (collectively, "ADM") process farm products for domestic and international consumption. As a result of the Great Flood of 1993, ADM incurred substantial extra expenses and losses of income because of increases in both transportation costs and the cost of raw materials. ADM submitted claims to its insurance providers, who paid ADM approximately $11 million for losses sustained from the flooding. (See Compl., Doc. 1, Exhs). The defendant insurance companies denied approximately $44 million in additional claims submitted by ADM, which precipitated this breach of contract action. *Id.*

## II. *Background.*

Phoenix, Commonwealth, Navigators, and Albany sold ADM Difference In Conditions ("DIC") policies for the period October 1, 1992 to October 1, 1993. ADM claims that Paragraph 13Q of these policies provides coverage for ADM's "Raw Material Claims." ADM's "Raw Material Claims" relate to the expenses incurred by ADM to obtain raw materials, (i.e., crops), to keep its processing plants running. Because the 1993 Flood damaged numerous Midwestern farms, the cost of crops increased and ADM was forced to pay a higher price to get raw materials to keep its plants running.

ADM seeks coverage under Paragraph 13Q for these increased raw material costs that it incurred from approximately June 1993 through June 1994. The insurers claim, however, that the subject policies expired at 12:01 a.m. on October 1, 1993 and that by its terms, Paragraph 13Q does not provide CBI & EE coverage beyond October 1, 1993.

## III. *Interpretation of the Policy.*

Contract interpretation is particularly suited to disposition by summary judgment. *Metalex Corp. v. Uniden Corp. of America,* 863 F.2d 1331 (7th Cir.1988). Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Because neither party has raised the issue of choice of law in this diversity action, the Court will apply the substantive law of Illinois, the forum state. *Travelers Ins. Cos. v. Penda Corp.,* 974 F.2d 823, 827 (7th Cir.1992) (citing *Wood v. Mid–Valley, Inc.,* 942 F.2d 425, 426–27 (7th Cir.1991)).

The construction of an insurance policy and its provisions is a question of law. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.,* 154 Ill.2d 90, 180 Ill.Dec. 691, 699, 607 N.E.2d 1204, 1212 (1992). In construing an insurance policy, the Court's task is to ascertain the intent of the parties to the contract, "with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract." *Id.* (citations omitted). If the policy language is unambiguous, there is no issue of material fact, and the Court must determine the contract's meaning as a matter of law affording the contract language its plain, ordinary, and popular meaning. *Id.*[1]

---

**1.** Defendants have argued that this Court must find that Paragraph 13Q is unambiguous because in the Memorandum and Order dated July 17, 1996, this Court specifically ruled that Paragraph 13Q was unambiguous with regard to whether the term "suppliers of goods and services" could include certain farmers and government agencies. The current issue before the Court, however, is whether Paragraph 13Q is ambiguous as to whether it extends coverage beyond the expiration date of the Policies. A provision may be deemed unambiguous as to scope but ambiguous as to duration, or vice versa. Consequently, the Court's determination that 13Q is not ambiguous as to scope in the July 17, 1996 Order is irrele-

The parties have agreed that the question before the Court is clearly one of policy construction and one that must be determined by the Court as a matter of law. Consequently, the Court must determine the Policies' meaning as a matter of law, affording the contract language its plain, ordinary and popular meaning. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 180 Ill.Dec. 691, 699, 607 N.E.2d 1204, 1212 (1992).[2]

■ Phoenix, Navigators, Commonwealth and Albany have moved for partial summary judgment requesting a ruling that there is no coverage under Paragraph 13Q for any Raw Material losses sustained on or after October 1, 1993. The insurers argue that the DIC policies expired at 12:01 a.m. on October 1, 1993 and that nothing in Paragraph 13Q extends coverage beyond October 1, 1993. They further argue that two other provisions of the Policies, Paragraphs 9 and 10, contain language that extends coverage for certain losses for a period of time after the Policies' expiration date. Because Paragraph 13Q does not contain this language, insurers argue, Paragraph 13Q, by its terms, does not extend coverage beyond the Policies' expiration date.

Paragraph 13Q provides, in relevant part, that:

**13Q. *CONTINGENT BUSINESS INTERRUPTION AND EXTRA EXPENSE*** THIS POLICY COVERS AGAINST LOSS OF EARNINGS AND NECESSARY EXTRA EXPENSE RESULTING FROM NECESSARY INTERRUPTION OF BUSINESS OF THE INSURED CAUSED BY DAMAGE TO OR DESTRUCTION OF REAL OR PERSONAL PROPERTY, BY PERILS INSURED AGAINST UNDER THIS POLICY, OF ANY SUPPLIER OF GOODS OR SERVICES WHICH RESULTS IN THE INABILITY OF SUCH SUPPLIER TO SUPPLY AN INSURED LOCATIONS. (sic)

■ As shown by its label, Paragraph 13Q provides "Business Interruption" insurance. "Business Interruption insurance is insurance under which the insured is protected in the *earnings* which insured would have enjoyed had there been no interruption of business." *Quality Molding Co. v. American National Fire Ins. Co.*, 272 F.2d 779, 780 (7th Cir.1959). In other words, Business Interruption insurance protects earnings that are lost or diminished because of a business interruption.

In addition to Paragraph 13Q, the DIC policies at issue contain two other provisions that provide business interruption coverage. Specifically, Paragraph 9 provides coverage for loss of income due to a business interruption caused by direct physical damage to insured property, and Paragraph 10 provides coverage for Extra Expenses due to a business interruption as a result of direct physical damage caused by perils insured against under the Policy. Unlike Paragraph 13Q, which appears to be silent on the issue, both Paragraphs 9 and 10 extend coverage beyond the termination date of the Policies by specifically stating that the Paragraphs' coverages are "not to be limited by the day of expiration named in this Policy."

Another difference between Paragraphs 9 and 10 and Paragraph 13Q is that 9 and 10 provide coverage when there is business interruption due to direct physical damage to insured property or caused by perils insured against, and 13Q provides coverage when there is business interruption due to damage to the property of a *supplier* which results in

---

vant to the present determination of whether 13Q is ambiguous as to duration.

**2.** At one point in their brief, ADM argued that defendants' summary judgment motion is precluded by the fact that the Phoenix and Navigators policies did not expire until October 1, 1995 (Doc. 120, p. 11). The insurers vehemently contested this in their Reply stating that ADM has admitted and has consistently maintained that the Phoenix and Navigators policies did expire

on October 1, 1993. At oral argument, the parties assured the Court that there is no factual dispute regarding the October 1, 1993 termination date and that the issue before the Court is purely an issue of policy interpretation to be decided as a matter of law. Accordingly, the Court assumes that all parties agree that the four policies at issue terminated by expiration on October 1, 1993 and will disregard any arguments in the pleadings to the contrary.

the inability of a supplier to supply an insured location. Paragraphs 9 and 10 stand alone in the Policies. They are multi-paragraphed provisions which provide detailed information with which to calculate the losses or extra expense due to business interruption. In contrast, the relevant portion of Paragraph 13Q is a six-line paragraph which does not stand alone but which is grouped with seventeen other general provisions which are collectively called "Additional Conditions."

As noted, the insurers argue that because Paragraphs 9 and 10 explicitly extend coverage beyond the expiration date and Paragraph 13 does not, Paragraph 13 by its terms only provides coverage until the October 1, 1993 expiration date. On the other hand, ADM argues that according to *A. Miller & Co. v. Cincinnati Ins. Co.*, 217 Ill.App.3d 572, 160 Ill.Dec. 560, 562, 577 N.E.2d 885, 887 (1991), "the general purpose of business interruption insurance is to protect the earnings which the insured would have enjoyed had no interruption occurred." *See also Quality Molding Co.*, 272 F.2d at 780 ("the purpose of business interruption insurance is to protect the prospective earnings of the insured business.") (citations omitted). In other words, ADM argues, the general purpose of business interruption insurance is to make the insured "whole" or to restore the insured to a point that the insured would have enjoyed had no business interruption occurred. As such, ADM argues that Paragraphs 9, 10 and 13 should be construed "as a whole" and the language in Paragraphs 9 and 10 extending 9 and 10's coverage beyond the October 1, 1993 expiration date should be read into Paragraph 13Q.

ADM's statements regarding the general purpose of business interruption insurance and construing the policy as a whole are true as far as they go. There is a difference, however, in *choosing* to construe Paragraphs 9, 10 and 13Q together and *being required* to construe them together. As noted, Paragraph 13Q covers against "loss of earnings" and "necessary extra expense" resulting from necessary interruption of business of the insured caused by damage to the property of a supplier of goods or services by the

perils that are insured against. The insurers have categorized the claims that ADM has submitted under Paragraph 13Q as "extra expense" claims and not "business interruption" claims (Doc. 125, p. 5). ADM does not contest this categorization but merely argues that this is a distinction without a difference (Doc. 120, p. 8).

Assuming without deciding that the claims that ADM has submitted under Paragraph 13Q are "extra expense" rather than "business interruption" claims, the Court has reviewed the Policies for a definition of "extra expense." Paragraph 10 provides such a definition. Specifically, Paragraph 10B(1) provides that:

**10. EXTRA EXPENSE:**

B. DEFINITIONS:

THE FOLLOWING ITEMS *WHEREVER USED IN THIS POLICY* SHALL BE DEFINED AS FOLLOWS:

(1) *EXTRA EXPENSE:* THE EXCESS, IF ANY, OF THE TOTAL COST *DURING THE "PERIOD OF RESTORATION"* CHARGEABLE TO THE CONDUCT OF THE INSURED'S BUSINESS OVER AND ABOVE

THE TOTAL COST THAT WOULD NORMALLY HAVE BEEN INCURRED TO CONDUCT THE BUSINESS DURING THE SAME PERIOD HAD NO PERIL INSURED AGAINST AND NOT EXCLUDED OCCURRED; ...

(Doc. 120, Exh. 3, p. 17) (emphasis added).

Paragraph 10B(3) defines "period of restoration" as follows:

(3) *PERIOD OF RESTORATION:* THAT PERIOD COMPUTED FROM THE TIME OF THE DAMAGE CAUSED BY A PERIL INSURED AGAINST AND NOT EXCLUDED TO THE TIME WHEN WITH DUE DILIGENCE AND DISPATCH, THE PROPERTY COULD BE REPAIRED OR REPLACED AND MADE READY FOR NORMAL

OPERATIONS, *NOT TO BE LIMITED BY THE DATE OF EXPIRATION OF THIS POLICY*

(Doc. 120, Exh. 3, p. 18) (emphasis added).[3]

Based upon the above, the term "Extra Expense" as used in Paragraph 13Q is defined in Paragraph 10B. Paragraph 10B(1) defines "Extra Expense," *wherever used in the Policy,* as the total cost that accumulates during a "Period of Restoration." Paragraph 10B(3) defines "Period of restoration" as a "... period ... not to be limited by the date of expiration of this Policy." Accordingly, affording the above language its plain, ordinary and popular meaning, *Outboard Marine Corp.,* 180 Ill.Dec. at 699, 607 N.E.2d at 1212, Paragraph 13Q, by its terms, does extend coverage beyond the expiration date of October 1, 1993.

## IV. *Summary.*

The Court finds that the language of Paragraph 13Q is unambiguous. In addition, defendants have not shown that coverage under Paragraph 13Q terminated when the policies expired on October 1, 1993. Consequently, defendants have not met their burden of demonstrating that they are entitled to judgment as a matter of law and their Motion for Partial Summary Judgment under the DIC Policies Relating to Post–October 1, 1993 Raw Material Losses (Doc. 91) is **DENIED.**

**IT IS SO ORDERED.**

---

**3.** The Policies from Commonwealth, Navigators and Albany contain identical language. (See Doc. 120, Exhs. 4, 6, 5 and 7, pp. 17–18).