No. 2--00--0587

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

LYON METAL PRODUCTS, L.L.C., ) Appeal from the Circuit Court

) of Kane County.

Plaintiff-Appellant, ) 

) 

v. ) No. 97--MR--170

)

PROTECTION MUTUAL INSURANCE ) 

COMPANY, ) Honorable

) Pamela K. Jensen,

Defendant-Appellee.
 ) Judge, Presiding.

______________________________________________________________________________

JUSTICE RAPP delivered the opinion of the court:

In this case involving business interruption insurance, a jury found that plaintiff, Lyon Metal Products, L.L.C. (Lyon), proved a business interruption loss of $400,000.   Lyon appeals, contending (1) that the trial court erred in entering 
summary judgment
 in favor of defendant Protection Mutual Insurance Company (Protection Mutual) on Lyon's claim pursuant to the Illinois Insurance Code (Insurance Code) (215 ILCS 5/155 (West 1996)); (2) that the trial court erred in denying its motion 
in
 
limine
; (3) that the trial court erred in excluding evidence; (4) that the trial court erred in instructing the jury; (5) that the jury's verdict was against the manifest weight of the evidence; and (6) that the trial court erred in denying prejudgment interest.  We affirm.

I. FACTS 

Lyon manufactures various steel workplace products including shelving, storage racks, ergonomic furniture, cabinets, lockers, and other miscellaneous items.  Lyon has its principal manufacturing and distribution facility in Aurora, Illinois.  Lyon also sells and distributes certain products it does not manufacture, referred to as pass-through items. 

Lyon was insured by Protection Mutual under an "all risk" insurance policy providing various coverages, including property damage, for a premium of $112,000 per year.  Protection Mutual also provided Lyon with additional coverage against business interruption for a premium of $39,499 per year. 

On July 17 to 18, 1996, flooding caused extensive damage to Lyon's Aurora facility.  As a result of the flood, Lyon was prevented from producing goods and continuing business operations for 22 consecutive days, including 17 production days.

Protection Mutual compensated Lyon in the amount of $7,878,836 for property damage, which included the regular cash selling price of $3,773,250 for the damaged finished goods in inventory. Protection Mutual also paid Lyon $281,724 pursuant to the business interruption endorsement for the expenses Lyon incurred to reduce its loss and make up lost production.  Lyon made further claim for business interruption loss in the amount of $5,009,105.  Protection Mutual disagreed with Lyon's calculation of its business interruption loss.

Lyon filed a complaint against Protection Mutual alleging breach of contract and a cause of action pursuant to section 155 of the Insurance Code (215 ILCS 5/155 (West 1996)) for alleged vexatious and unreasonable delay in payment.  Lyon alleged that it tendered to Protection Mutual a $5,009,105 claim for the actual loss sustained and expenses covered under the business interruption endorsement of the policy.  Lyon further alleged that Protection Mutual refused to pay the claim.  Subsequently, Lyon amended the complaint, adding a count pursuant to the Illinois Interest Act  (815 ILCS 205/0.01 
et
 
seq
. (West 1996)) for prejudgment interest on the amount Protection Mutual failed to pay.  Protection Mutual denied Lyon's allegations, contending that the amount Protection Mutual paid Lyon for its damaged inventory must be considered when calculating Lyon's actual loss sustained under the business interruption endorsement.

Protection Mutual filed a motion for partial 
summary judgment (735 ILCS 5/2--1005 (West 1996)) 
on the breach of contract claim, requesting interpretation and application of the business interruption endorsement of the policy.  Protection Mutual also filed a motion for summary judgment on Lyon's Insurance Code claim.
  Protection Mutual argued that it was entitled to partial 
summary judgment 
on the breach of contract count because, although the amount of the business interruption loss is a factual issue in dispute, the legal issue of Protection Mutual's entitlement to a credit against the business interruption loss should be decided by the court as a matter of law.  Protection Mutual contended that the court should rule that the fact that it paid Lyon the regular cash selling price for Lyon's damaged inventory decreased or eliminated Lyon's business interruption loss because Protection Mutual became Lyon's customer and prevented Lyon from suffering lost earnings from lost sales during the period of interruption.  In response, Lyon argued that it suffered independent losses due to property damage and business interruption and should be compensated for both losses.  The trial court denied Protection Mutual's motion for partial summary judgment.  In ruling on this motion, the court stated:

"Let me just rule on this part of it.  I have read this, reread it, and intend to reread it again.  It's neither clear nor free from doubt in my mind that the insurance company, Protection Mutual, the defendant in this case, is entitled to a credit.

However, this is not to be construed as a ruling with respect to whether or not the existence of the six weeks inventory affects the calculation of the appropriate recovery under the business interruption endorsement, and I am not prepared to say that at this point.

I think there are genuine issues on the trier of fact that need to be resolved on this issue as I perceive it to be at this juncture; and so the motion for summary determination  of this issue is going to be denied."  

The trial court granted Protection Mutual's motion for summary judgment on Lyon's claim under the Insurance Code.

Prior to trial, Lyon filed a motion 
in
 
limine
 seeking the exclusion of evidence related to a setoff or credit based upon payments made by Protection Mutual to Lyon for property damage, claiming that the policy contains no language providing for such a setoff or credit.  In denying this motion, the court stated:

"[T]he issue in this case is actual loss sustained during the period of interruption in terms of net profit which is prevented from being earned due to the interruption and fixed charges to the extent only that such charges would have been earned had no interruption of production or suspension of business operations occurred.

These motions will be denied, insofar as granting them would preclude any testimony with respect to the effect, if any, of payment for inventory under the property endorsement on the calculation *** of actual loss sustained under the business endorsement provisions of this policy."

At trial, Lyon called its chief executive officer, Robert Washington.  Washington said that Lyon was prevented from producing goods and from continuing business operations during the  period of interruption.  Lyon received $3,700,000 from Protection Mutual for the inventory that was damaged in the flood.  Lyon never sold its damaged inventory to Protection Mutual, and the $3,700,000 was not booked as a sale. 

Washington estimated that Lyon would have produced 300,000 pounds of goods per day and would have done 100,000 pounds of pass-through business per day for the 17-day period of business interruption.  The goods have a sales value of approximately $1.30 per pound.  The sales volume of the produced goods and the pass-through goods for the 17-day period is approximately $8,800,000.  Washington reduced that number by the variable charges, which are about 50% of the sales volume, and calculated a figure of $4,400,000 in lost net profit and fixed charges.

According to Washington, Lyon also received a total of $281,000 from Protection Mutual for expenses to reduce the loss.  Lyon was able to put its inventory back to preflood levels by sometime in November or December 1996.  

Lyon's next witness was Douglas Harrison, vice-president of finance for Lyon.  Harrison prepared a claim for Lyon's loss due to business interruption and submitted it to Protection Mutual.  According to Harrison, Lyon's projected sales for the period of business interruption were $4,074,450 based on the actual sales reached by Lyon in June 1996.  According to Harrison's claim, the total lost net profit and fixed charges earned for the period of business interruption were $4,413,506.  Harrison's claim also included various expenses Lyon incurred in reducing its loss and replenishing its inventory for a total business interruption claim of $5,009,105.  Harrison acknowledged that Protection Mutual paid $281,724 of Lyon's expense in reducing loss.  

Harrison indicated that Lyon was paid roughly $3,700,000 for damaged inventory, and that amount was listed as an extraordinary item on Lyon's financial statement rather than as a receivable.  The $3,700,000 was not included in the $95 million in sales for 1996.  Lyon employees worked overtime in August, September, and October 1996 to replenish the inventory.  The overtime pay was among the expenses Lyon incurred to reduce loss and replenish inventory and was included in the claim Harrison prepared.

Protection Mutual called Judith Spry, certified public accountant, who performed an analysis of Lyon's actual loss sustained from business interruption.  According to Spry, the first step in calculating a business interruption loss is to project sales.  Every sales dollar is made up of variable charges, fixed charges, and net profit.  The actual loss sustained is the amount of net profit and fixed charges that can be allocated to the lost sales.  Variable costs are not part of the equation because those costs do not continue during a period of interruption.

To determine the projected sales, Spry used the first six months of 1996.  For that six-month period, the average net profit and fixed charges as a percentage of sales were 40.25%.  Spry calculated projected sales of $2,783,808 for the period of business interruption.  Spry then took into account the sale of the inventory to Protection Mutual for $3,773,250, which eliminated lost sales for the period of business interruption because that amount exceeded projected sales for the period of business interruption.  Spry explained that Lyon made its net profit and fixed charges for the period of business interruption from the sale of the damaged inventory to Protection Mutual.  According to Spry, there is no distinction between Protection Mutual paying the regular selling price for Lyon's damaged inventory and a customer purchasing that inventory at the selling price. 

Protection Mutual also called John A. Damico, certified public accountant.  Damico explained that net profit is what is left after subtracting fixed charges and variable charges from sales.  According to Damico, the business interruption endorsement of the policy says that the insured is entitled to recover the net profit and the fixed charges that the insured could not earn due to the interruption of business.  Damico explained that, if there was a reduction in sales that was attributable to the flood, then Lyon would be compensated for the net profit and fixed charges attributable to those sales.  In determining the sales that Lyon would have enjoyed had there been no flood, Damico looked at monthly sales for 1995 and 1996.  

Damico learned that Protection Mutual paid Lyon the regular cash selling price of about $3,700,000 for Lyon's damaged inventory.  Damico considered the $3,700,000 an actual sale that should be subtracted from the projected sales for the period of business interruption.   According to Damico, the fact that Lyon was compensated for the damaged inventory allowed Lyon to earn net profit and fixed charges attributable to those finished goods. 

Damico calculated Lyon's projected lost sales for the period of interruption at $2,783,808 to $2,819,809.  According to Damico, 41.62% of every sales dollar Lyon made consists of fixed charges and net profit.  Damico calculated Lyon's lost net profit and fixed charges by multiplying the projected sales numbers by 41.62% and arriving at a result of $1,158,621 to $1,173,605. 

Next, Damico credited the lost net profit and fixed charges with the net profit and fixed charges earned by Lyon as a result of the compensation Lyon received for the damaged inventory.  The net profit and fixed charges attributable to the $3,773,250 in compensation for the inventory are $1,570,427.  When Damico subtracted the $1,570,427 from the lost net profit and fixed charges, he arrived at zero lost profit and fixed charges or, put another way, zero actual loss sustained.  According to Damico, Lyon recovered $1,570,427 in net profit and fixed charges when it was compensated for the damaged inventory, and that amount exceeded the net profit and fixed charges Lyon would have earned had there been no flood. 

After the evidence was closed, Protection Mutual made a motion for a directed verdict requesting the trial court to direct the jury to include the payment of $3,773,250 for the damaged inventory in actual sales when calculating Lyon's business interruption loss.  The trial court denied the motion.

The jury returned a verdict in favor of Lyon and against Protection Mutual.  The jury found that Lyon proved a business interruption loss according to the terms of the insurance policy in the sum of $400,000.  The trial court entered judgment on the verdict.  The trial court denied Lyon's posttrial motion and  motion for prejudgment interest.  Lyon timely appealed.

II. DISCUSSION

A. SUMMARY JUDGMENT ON LYON'S INSURANCE CODE CLAIM

Lyon contends that the trial court erred in granting summary judgment in favor of Protection Mutual on Lyon's Insurance Code claim.  Specifically, Lyon contends that Protection Mutual's conduct has been vexatious and unreasonable as a matter of law or, alternatively, there were genuine issues of material fact as to whether Protection Mutual's failure to pay Lyon's claim was vexatious and unreasonable.  Protection Mutual contends that the trial court properly granted summary judgment because Lyon produced no evidence to establish a factual basis for the unreasonableness of Protection Mutual's position.

Summary judgment is proper only where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that no genuine issue as to any material fact exists and that the movant is entitled to judgment as a matter of law.  735 ILCS 5/2--1005(c) (West 1998).  In ruling on the motion, the court is required to construe all evidentiary material strictly against the movant and liberally in favor of the nonmovant.  
Laurel Motors, Inc. v. Airways Transportation Group of Cos.
, 284 Ill. App. 3d 312, 316 (1996).  While the nonmoving party in a summary judgment motion is not required to prove his case, he must nonetheless present a factual basis that would arguably entitle him to a judgment.  
Gauthier v. Westfall
, 266 Ill. App. 3d 213, 219 (1994).  If from the pleadings, depositions, affidavits, and admissions on file, a plaintiff fails to establish an element of his cause of action, summary judgment for the defendant is proper.  
Pyne v. Witmer
, 129 Ill. 2d 351, 358 (1989).  The propriety of an order granting summary judgment is a question of law we review 
de
 
novo
.  
Laurel Motors, Inc.
, 284 Ill. App. 3d at 316.

Section 155 of the Insurance Code provides an extracontractual remedy to policyholders whose insurer refuses to recognize liability or pay a claim under a valid insurance policy in a vexatious and unreasonable manner.  
Cramer v. Insurance Exchange Agency
, 174 Ill. 2d 513, 520 (1996).  Section 155(1) provides:

"(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25 % of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $25,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action."  215 ILCS 5/155(1) (West 1996).

However, if there is a 
bona
 
fide
 dispute about the coverage, delay in settling the claim does not violate the statute.  
Green v. International Insurance Co.
, 238 Ill. App. 3d 929, 935 (1992).

Lyon alleged in its complaint that the failure and refusal of Protection Mutual to pay the claim were vexatious and unreasonable such that Lyon is entitled to fees, costs, and penalties pursuant to the statute.  In its motion for summary judgment, Protection Mutual raised a 
bona
 
fide
 dispute regarding the calculation of the actual loss sustained pursuant to the business interruption endorsement, namely, whether the $3,700,000 in compensation for the damaged inventory should be considered in calculating actual loss sustained.  Protection Mutual pointed to language in the business interruption endorsement and to case law supporting its position.  Furthermore, nothing in the 
pleadings, depositions, affidavits, or admissions
 rebuts Protection Mutual's assertion that there was a 
bona
 
fide
 dispute as to the coverage under the business interruption endorsement.  Accordingly, there was no factual basis 
that would arguably entitle Lyon to a judgment
 on this claim.  Therefore, the trial court did not err in granting summary judgment for Protection Mutual on the Insurance Code claim.

B.  MOTION 
IN
 
LIMINE

On appeal, Lyon contends that the trial court erred in denying its motion 
in
 
limine
 that sought the exclusion of evidence of a setoff or credit against Lyon's business interruption loss based upon the payment for the damaged inventory.  Lyon argues that the trial court should have ruled as a matter of law that the insurance policy does not allow Protection Mutual to reduce Lyon's business interruption loss by the payment for damaged inventory.  Lyon now urges this court to make that ruling and remand the cause for a new trial.

Initially, Protection Mutual argues that Lyon has waived this issue on appeal because Lyon did not raise it in its posttrial motion.  We disagree.  Lyon specifically states in its posttrial motion that the amount recoverable by Lyon under the business interruption endorsement is to be computed based upon Lyon's loss of production and not lost earnings.  A posttrial motion need not specify errors in detail; the motion need only indicate the grounds upon which the movant relies with sufficient particularity to afford the trial court the identity of the error relied upon.  
Wilson v. Clark
, 80 Ill. App. 3d 194, 198 (1980).  The trial court was aware of Lyon's specific objection to admitting evidence of a setoff or credit against the amount due under the business interruption endorsement for payments to compensate Lyon for its damaged inventory.  Therefore, Lyon has not waived this issue on appeal.

The trial court was asked numerous times during this case to rule on whether the payment for the damaged inventory should be considered in calculating Lyon's business interruption loss but did not do so.  Instead, the trial court characterized the issue as one of fact for the jury to consider.  Essentially the trial court ruled that the compensation for the damaged inventory could be included in the calculation if the jury so chose.

We agree that this is an issue of law that should have been determined by the trial court prior to trial.  Legal questions of the construction of an insurance policy, and the parties' rights and obligations thereunder, rest exclusively with the trial court.  
Chester v. State Farm Mutual Automobile Insurance Co.
, 227 Ill. App. 3d 320, 325-26 (1992).  "When facts are undisputed, the question of whether those facts fall within the provisions of an insurance policy is a matter of interpretation, the province of the court rather than the fact finder."  
United Farm Bureau Mutual Insurance Co. v. Elder
, 86 Ill. 2d 339, 342-43 (1981).  The construction of an insurance policy is a question of law subject to 
de
 
novo
 review.  
American States Insurance Co. v. Koloms
, 177 Ill. 2d 473, 479-80 (1997).  

Lyon directs us to 
Kus v. Sherman Hospital
, 268 Ill. App. 3d 771, 782 (1995), where this court held that permitting a jury to determine a legal issue requires reversal when plaintiff is deprived of a fair trial.  Lyon contends that 
Kus
 requires reversal of this jury's verdict.  We do not agree.  

This court can make an independent determination of a question of law (
Bowers Manufacturing Co. v. Chicago Machine Tool Co.
, 117 Ill. App. 3d 226, 232 (1983)), and, for the reasons that follow, we conclude that the payment for damaged inventory must be considered in calculating Lyon's business interruption loss.  Accordingly, allowing the jury to include the damaged inventory payment in the calculation if it saw fit, when the jury should have been instructed that it must include the payment, did not deprive Lyon of a fair trial.

Protection Mutual's position is that Lyon sold the damaged inventory to it, thereby eliminating lost sales (including the component net profit and fixed charges) during the period of business interruption.  Lyon argues that there is no language in the insurance policy that supports Protection Mutual's position or that specifically states "Protection Mutual will credit or reduce the amount of business interruption liability by the amounts paid for finished goods inventory at the cash selling price."  

We believe that the language defining "actual loss sustained" under the business interruption endorsement of the policy requires that the compensation for the damaged inventory be considered in calculating actual loss sustained.  The policy reads, in pertinent part, as follows:

"
BUSINESS INTERRUPTION ENDORSEMENT

In consideration of additional premium, this Policy is extended to cover the Actual Loss Sustained by the insured during a Period of Interruption directly resulting from physical loss or damage of the type insured against by this Policy, to property not otherwise excluded by this Policy, utilized by the insured and located as described elsewhere in this policy.

ACTUAL LOSS SUSTAINED

In the event the Insured is wholly or partially prevented from producing goods or from continuing business operations or services and is unable:

(a) to make up lost production within a reasonable period of time (not to be limited to the period during which     production is interrupted), or

(b) to continue business operations or services,

all through the use of any property or service owned or controlled by the Insured, or obtainable from any other sources, whether the property or service is at a location specified herein or through working extra time or overtime at the location(s) specified herein or at any other location, including any other location(s) acquired for the purpose, then this Company shall be liable, subject to all other conditions of this Policy not inconsistent herewith, for the Actual Loss Sustained of the following items during the Period of Interruption:

Item No. 1 (A) NET PROFIT, before deducting income taxes, which is prevented from being earned due to the interruption of production or suspension of business operations or services;

(B) FIXED CHARGES ***, to the extent only that such charges would have been earned had no interruption of production or suspension of business operations or services occurred.

***

EXPENSES

Expenses, over and above normal operating expenses, necessarily incurred
 by the Insured in making up lost production or in reducing loss otherwise payable under this Endorsement are covered hereunder, but in no event shall this Company be liable for an amount greater than that for which it would have been liable had the insured been unable to make up any lost production or to continue any business operations or services."

The language is clear and unambiguous so that the meaning of the contract can be discerned; accordingly, we must give effect to that meaning.  See 
Grevas v. United States Fidelity & Guaranty Co.
, 152 Ill. 2d 407, 410 (1992).  Clearly, the endorsement states that if the insured is able to continue its business operations, namely, selling metal workplace products, through the use of any of its property, including the damaged inventory, then the insured is required to do so.  Under the terms of the business interruption endorsement, Protection Mutual is liable for the actual loss sustained in net profit that is prevented from being earned due to the interruption as well as the fixed charges that would have been earned had no interruption occurred.  If no sales are prevented by the interruption, net profit and fixed charges will be earned.  Accordingly, if there is enough inventory to meet the projected sales for the period of interruption there is no loss of earnings.

A review of pertinent case law supports our conclusion.  "The general purpose of business interruption insurance is to protect the earnings which the insured would have enjoyed had no interruption occurred."  
A. Miller & Co. v. Cincinnati Insurance Co.
, 217 Ill. App. 3d 572, 576 (1991).  See also 
Archer-Daniels-Midland Co. v. Phoenix Assurance Co.
, 975 F. Supp. 1124, 1127 (S.D. Ill. 1997) ("Business Interruption insurance protects earnings that are lost or diminished because of business interruption").  In numerous cases it has been stated, and we think correctly, that when there is a loss of production capacity without a loss of earnings there is no recoverable business interruption except the extra expense necessary to prevent loss of earnings.  
National Union Fire Insurance Co. v. Anderson-Pritchard Oil Corp.
, 141 F.2d 443, 445 (10th Cir. 1944); 
Northwestern States Portland Cement Co. v. Hartford Fire Insurance Co.
, 360 F.2d 531, 533 (8th Cir. 1966); 
MetalMasters of Minneapolis, Inc. v. Liberty Mutual Insurance Co.
, 461 N.W.2d 496 (Minn. App. 1990).  

We find 
Portland Cement
 to be instructive on this point.  In 
Portland Cement
 a fire rendered one of the insured's two cement manufacturing plants incapable of producing clinker, an ingredient in cement.  The insured was therefore required to use its older, less efficient plant to produce clinker.  
Portland Cement
, 360 F.2d at 532.  The insured did not suffer any loss of sales due to the interruption because it had a large inventory of finished cement and stockpiled clinker to meet customer demands.  
Portland Cement
, 360 F.2d at 532-33.  

The insured contended that its business interruption policy entitled it to the value of the clinker it would have produced had there not been a fire.  The insured asserted that as a result of the fire it lost production, not sales, and that under the language of the policy both production and sales are insured.  The insurer contended that the insured was entitled only to the expense in excess of normal incurred in replacing the finished stock of cement that was sold to reduce the loss.  
Portland Cement
, 360 F.2d at 533.

The 
Portland Cement
 court agreed with the insurer and found that the policy was designed to insure against loss of earnings and, in the absence of loss of earnings, liability was limited to the extra expense necessary to prevent the loss of earnings.  
Portland Cement
, 360 F.2d at 533.  The 
Portland Cement
 court stated:

" 'This policy covers only against loss resulting directly from necessary interruption of business, caused by damage to or destruction of real or personal property, except finished stock.'  It is readily apparent, as we will endeavor to explain, that the loss mentioned is actual loss of earnings resulting from the interruption of the insured's business caused by the perils insured against.  That this is so is consistent with the basic object for which such a business is ordinarily conducted, 
viz.
, to realize earnings from the operation of business." 
Portland Cement
, 360 F.2d at 533. 

Lyon points out that 
Portland Cement
 does not address whether the insurer can reduce the amount due under the business interruption coverage by the compensation paid by the insurer for damaged inventory under property damage coverage.  We fail to see how the source of the earnings due to sales changes the calculation of actual loss sustained under the policy.  The result is the same whether the inventory was sold to customers during the period of interruption or the insured received the same amount of compensation for the damaged inventory under a policy of insurance, namely, no loss of earnings from the loss of sales during the period of business interruption.

Lyon argues that the compensation for the damaged inventory under the property damage portion of the insurance policy is not a sale as defined in 
Foxfield Realty, Inc. v. Kubala
, 287 Ill. App. 3d 519, 524 (1997), citing Black's Law Dictionary 1337 (6th ed. 1990), because the title did not transfer to Protection Mutual nor did Protection Mutual take actual possession of the damaged inventory.  Lyon contends that, because there was no sale of the damaged goods inventory, the $3,773,250 cannot be included in the calculation of actual loss sustained.  We disagree.  

For the purpose of this analysis, there is no distinction between Lyon's selling its damaged inventory to a customer in the ordinary fashion and Lyon's receiving the regular cash selling price for the same inventory under the terms of an insurance policy.  Whether a "sale" took place is not crucial.  The gravamen of the analysis is whether the compensation for the damaged inventory allowed Lyon to earn net profit and fixed charges in the same way Lyon would have earned net profit and fixed charges had there been no flood and the inventory was sold in the ordinary manner.  

Lyon also makes the argument that it paid an additional premium for the additional business interruption coverage and,  therefore, Lyon had two separate coverages and suffered two separate losses.  Accordingly, Lyon argues, it should be compensated for its loss of production as well as its damaged inventory.  Lyon contends that under Protection Mutual's theory either the additional business interruption coverage was illusory or Lyon did not get the value of the property damage coverage.  We do not agree.  

Lyon's argument underscores its misunderstanding of the business interruption coverage it purchased.  The business interruption endorsement covers a loss of earnings due to a loss of production, not just a loss of production.  See 
Portland Cement
, 360 F.2d at 533.  Lyon was compensated for the damaged finished goods under the property damage portion of the policy and for the expenses it incurred in reducing its loss under the business interruption endorsement.  Additionally, the jury in this case apparently concluded that Lyon's damaged inventory was not sufficient to cover the projected sales for the period of interruption and determined that Protection Mutual owed Lyon $400,000 for the net profit and fixed charges attributable to projected sales in excess of the $3,773,250 in compensation for damaged inventory.  That $400,000 was in addition to the compensation for the damaged finished goods.  Accordingly, Protection Mutual was required to pay Lyon under both types of coverage. 

Moreover, business interruption insurance, like all insurance, should comport with Illinois public policy indemnifying the insured for the loss but not providing a windfall profit.  
Cohen Furniture Co. v. St. Paul Insurance Co.
, 214 Ill. App. 3d 408, 415 (1991).  If Lyon were allowed to recover for the damaged inventory, the lost production during the period of interruption, and the expenses incurred in replenishing its inventory, it would recover twice for the net profit and fixed charges attributable to the damaged inventory.

We find no merit in Lyon's alternative argument that, at best, Protection Mutual's position reflects an ambiguity in the policy that must be resolved in favor of Lyon.  The record reveals that at no time did ether party suggest to the trial court that the policy was ambiguous, nor have we found any ambiguity.

For the foregoing reasons, we hold that the policy requires that the compensation paid to Lyon for damaged inventory must be considered in calculating Lyon's actual loss sustained as defined by the business interruption endorsement to the insurance policy.  Accordingly, the trial court did not err in denying Lyon's motion 
in
 
limine
 requesting the exclusion of evidence of compensation for the damaged inventory to prove actual loss sustained.

C. EXCLUSION OF 3201 ENDORSEMENT

Lyon' next argument on appeal is that the trial court erred in  prohibiting Lyon from admitting Protection Mutual's 3201 endorsement.  The 3201 endorsement provides:

"In determining net sales in the event of loss hereunder at mercantile or nonmanufacturing operations, any amount recovered under the property damage policies for loss or damage to or destruction of merchandise shall be included as though the merchandise had been sold to the insured's regular customers."

Although this endorsement was not included in the policy sold to Lyon, Lyon believes that it was relevant to show that when Protection Mutual intends to take a credit against the business interruption loss for property damage payments made to the insured it knows how to do so.  Protection Mutual responds that such evidence was irrelevant to the issue of the calculation of Lyon's actual loss sustained under the business interruption endorsement of this insurance policy.  We agree with Protection Mutual.

The exclusion or the admission of evidence rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion.  
Leonardi v. Loyola University
, 168 Ill. 2d 83, 92 (1995).  The 3201 endorsement was not relevant to the calculation issue because neither party has suggested nor do we find that the insurance policy was ambiguous.  Extrinsic evidence is inadmissible to contradict the terms of an unambiguous contract.  
Missouri Pacific R.R. Co. v. American Re-Insurance Co.
, 286 Ill. App. 3d 129, 139 (1996).  Accordingly, the trial court did not err in excluding the 3201 endorsement from evidence.

D. JURY INSTRUCTION

Lyon contends that the trial court erred in charging the jury with the following instruction submitted by Protection Mutual:

"Business interruption insurance is designated to do for the business what the business would have done for itself had no loss occurred."

Lyon argues that this instruction unduly emphasizes an abstract principle that is not directly in issue.  We do not agree.  

The instruction is an accurate statement of the law. See 
National Union Fire Insurance Co.
, 141 F.2d at 445.  Having concluded as a matter of law that the insurance policy requires that the compensation paid for Lyon's damaged inventory be included in the calculation of the actual loss sustained, the court would have been correct to so instruct the jury.  A judgment will not be reversed on the basis of faulty jury instructions unless a party can show prejudice as a result.  
Bender v. Consolidated Mink Ranch, Inc.
, 110 Ill. App. 3d 207, 215 (1982).  If the instruction is at all faulty, it is in Lyon's favor; therefore, Lyon has not demonstrated prejudice, and reversal is not required.

E. MANIFEST WEIGHT OF THE EVIDENCE

Lyon's next contention on appeal is that the jury's verdict is against the manifest weight of the evidence.  Lyon argues that the verdict is not supported by the evidence whether the jury considered the $3,700,000 payment for the damaged inventory or not.  Lyon contends that, if the jury did consider the payment, the evidence does not support the verdict because Protection Mutual's experts testified that Lyon's actual loss sustained was at least $1,100,000 if the $3,700,000 payment is not included in the calculation.  On the other hand, Lyon contends that, if the jury did consider the payment, the $400,000 verdict is not supported by the evidence because as a matter of law the insurance policy does not provide for including this payment in calculating actual loss sustained and there is no evidentiary basis to do so because the $3,700,000 payment was not a sale.

In response, Protection Mutual asserts that Lyon has waived this issue because Lyon insisted on a general verdict form and objected to the special verdict forms prepared by Protection Mutual, which would have alleviated the uncertainty as to the method of calculation performed by the jury.  Protection Mutual therefore argues that Lyon cannot seek relief from error that Lyon has caused to be injected into the proceedings.

We believe a verdict form with special interrogatories would have been appropriate in this case.  However, the error Lyon assigns is that the jury's general verdict of $400,000 is against the manifest weight of the evidence, not that the trial court erred in rejecting a special verdict form in favor of a general verdict form.  Accordingly, we will consider the merits of Lyon's argument.   

A jury's verdict will not be set aside unless the verdict was contrary to the manifest weight of the evidence.  
Niewold v. Fry
, 306 Ill. App. 3d 735, 747 (1999).  In determining whether a jury's verdict is against the manifest weight of the evidence, the evidence must be examined in a light most favorable to the appellee.  
Niewold
, 306 Ill. App. 3d at 747.  A verdict is against the manifest weight of the evidence only when an opposite conclusion is clearly apparent or when the verdict appears to be arbitrary or to be unsupported by the evidence.  
Niewold
, 306 Ill. App. 3d at 747.

The jury determined that Lyon proved a business interruption loss according to the terms of the insurance policy in the amount of $400,000.  We need not consider the scenario where the jury did not consider the $3,700,000 payment because (1) we have rejected the arguments Lyon asserts in support of the jury's verdict being against the manifest weight of the evidence under that scenario; and (2) the evidence supports the verdict if the jury did consider that payment.  We will not disturb the jury's verdict unless we are able to say that there is no evidence that fairly tends to support the verdict.  See 
Gilman v. Kessler
, 192 Ill. App. 3d 630, 639 (1989).

The evidence presented at trial consisted of the following estimated figures:

Washington

Harrison

Spry

Damico

Projected  sales dollars during  interruption

8,800,000

4,074,450

2,783,808

2,783,808-2,819,809

Actual sales dollars during interruption

        0

         0

3,773,250

3,773,250

percentage of sales dollar allocated to net profit + fixed charges

      50%

      N/A

    40.25%

    41.62%

The jury reasonably could have arrived at the approximate figure of $4,500,000 in projected sales for the period of interruption, considering that the estimates ranged from $8,800,000 to $2,783,808.  If the jury subtracted roughly $3,700,000 in actual sales from $4,500,000 in projected sales, it would arrive at $800,000 in lost sales for the period of business interruption.  If the jury believed Washington's estimate that net profit and fixed charges are 50% of each sales dollar, then the jury would have multiplied the $800,000 in lost sales by .50 and arrived at $400,000 in actual loss sustained under the business interruption endorsement of the policy.  A verdict falling within the flexible range of conclusions that reasonably can be supported by the facts will be upheld on appeal.  
Best v. Taylor Machine Works
, 179 Ill. 2d 367, 412 (1997).

Lyon also contends that the jury's verdict is against the manifest weight of the evidence because Lyon proved fixed charges in excess of $2 million that are specifically covered in the  definition of actual loss sustained.  Lyon contends further that Protection Mutual's property damage payment has nothing to do with the fixed charges incurred during the period of interruption.  We disagree.

The evidence established that every sales dollar is made up of variable charges, fixed charges, and net profit.  Therefore, when Lyon was reimbursed for the damaged inventory, it earned the fixed charges attributable to the $3,773,250.  Also, a percentage of the $400,000 verdict presumably represents fixed charges owed to Lyon. 

After examining the evidence in this case in a light most favorable to Protection Mutual, we cannot say that the jury's verdict was against the manifest weight of the evidence.

F. PREJUDGMENT INTEREST

Finally, Lyon contends that the trial court should have granted its request for prejudgment interest.  We disagree.

Whether to award prejudgment interest is a matter within the trial court's sound discretion, and its decision will not be disturbed on appeal absent an abuse of discretion.  
Marcheschi v. Illinois Farmers Insurance Co.
, 298 Ill. App. 3d 306, 313 (1998).

Section 2 of the Interest Act provides, in pertinent part, "[c]reditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any *** instrument of writing."  815 ILCS 205/2 (West 1998).  An insurance policy is an instrument of writing covered by this statute.  
Couch v. State Farm Insurance Co.
, 279 Ill. App. 3d 1050, 1054 (1996).  In order to recover prejudgment interest, the sum due must be liquidated or subject to an easy determination by calculation or computation.  
Marvel Engineering Co. v. Commercial Union Insurance Co.
, 118 Ill. App. 3d 844, 854 (1983).

The central issue in this case was the calculation of Lyon's actual loss sustained under the business interruption endorsement.  Lyon claimed it was due $5,009,105 in addition to the amounts already paid by Protection Mutual pursuant to the property damage and business interruption endorsements to the policy.  Protection Mutual claimed that it owed Lyon little or nothing under the business interruption endorsement because Lyon had not lost net profit and fixed charges during the period of business interruption because it was compensated for its damaged inventory.  The jury awarded Lyon substantially less than its claimed business interruption loss.  See 
Marvel Engineering Co.
, 118 Ill. App. 3d  at 854.  The large difference between what Lyon claimed in business interruption loss, what Protection Mutual calculated that loss to be, and what the jury ultimately awarded is a strong indication that the sum due pursuant to the business interruption endorsement was not easily determined.  See 
Couch
, 279 Ill. App. 3d at 1055.

Accordingly, we conclude that the trial court did not abuse  its discretion in denying Lyon's claim for prejudgment interest, and we affirm the trial court's decision.

III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

GROMETER and CALLUM
, JJ., concur.